Smith vs. Lewis et al.

---

SMITH VS. LEWIS and others.

*Tax title—First and second mortgagees—Finding, a part of the record.*

1. Where a second mortgagee of land purchases on foreclosure of his mortgage, he cannot acquire an absolute title, free from the lien of the first mortgage, through an assignment to him of an outstanding tax certificate, and a deed issued thereupon.

2. Such assignment (whether made before or after the foreclosure sale) must be regarded, *prima facie,* merely as a redemption of the land from the tax sale.

3. The finding of the court is a part of the record, without a bill of *exceptions;* and the judgment will be reversed if not sustained by the finding.

APPEAL from the Circuit Court for *Dodge* County.

Foreclosure of a mortgage. The defendants *Lewis and wife* and *Tesch* asserted by their answer a paramount title, under tax deeds. The court found the facts substantially as follows: In June, 1856, N. M. Juneau gave his note for $1000 to the La Crosse & Milwaukee Railroad Company, secured by the mortgage in suit, which was recorded July 5, 1856; the mortgagor covenanting therein to pay all taxes, &c. Said note and mortgage were for value assigned by the company to one Ludington, as security for the payment of a bond of the company running to Ludington; and afterwards plaintiff became owner thereof, in good faith, for a valuable consideration, without notice of any defense to the same; and there was due and unpaid thereon $640 of interest. In May, 1857, N. M. Juneau mortgaged the same premises to Paul Juneau, to secure the payment of $1500; and this mortgage was afterwards duly assigned to defendant *Lewis,* who paid a valuable consideration

therefor without *actual* notice of the former mortgage. *Lewis* foreclosed his mortgage, and bid in the premises at the sale, December 30th, 1859. Said premises were sold for the taxes of 1858, 1859 and 1860, in April, 1859, April, 1860, and May, 1861, respectively; and deeds issued in 1862, 1863 and 1864; and *Lewis* took possession of the premises at the date of the first deed, and continued in undisturbed possession, claiming title under said deed more than three years before the commencement of this action, the defendant *Tesch* occupying the premises under a lease from him.—Upon these facts the court held that *Lewis's* title under the tax deed was paramount to the lien of the plaintiff, and rendered judgment accordingly; from which the plaintiff appealed.

*E. Mariner*, for appellant :

1. The covenant to pay taxes, being for the benefit of the estate and of the equity of redemption, runs with the land, and passes with the mortgage into whosesoever hands it may come; and the owner of the equity of redemption is charged with it. *Pierce v. Kneeland*, 16 Wis., 672. 2. By the sheriff's deed *Lewis* acquired the legal title to the land; the tax certificates were mere liens, and, as soon as he acquired them, were merged in his legal title. They are several only in equity, and will not be so treated then, unless to prevent wrong. After *Lewis* got title to the land, he could not, by neglecting to pay the taxes, and taking tax deeds, acquire a new title. *Douglass v. Dangerfield*, 10 Ohio, 152 ; *Voris v. Thomas*, 12 Ill., 442 ; *Ballance v. Forsyth*, 13 How. (U. S.), 18 ; *Glancy v. Elliot*, 14 Ill., 456 ; *Gardiner v. Gerrish*, 23 Me., 46 ; *Lacey v. Davis*, 4 Mich., 140. 3. Counsel argued that *Lewis's* bid at the second mortgage sale must be held to have been for the property subject to all outstanding liens, whether of mortgage or tax certificates (*Mathews v. Aikin*, 1 Coms., 595 ; *Russell v. Dudley*, 3 Met., 147 ; 7. Paige, 591 ; 10 id., 503 ; 11 id., 28 ; *Hitchcock v. Merrick*, 18. Wis., 357); and that this was true between *Lewis* and the plaintiff, as well as between him and the mortgagor. Whatever ben-

efit or advantage a debtor has, resting in contract, by reason or on account of the debtor, or whatever security or indemnity he has against the debt, is a fund or means of payment, which equity will lay hold of and divert to the payment of the debt. *Curtis v. Tyler*, 9 Paige, 432; *Halsey v. Reed*, id., 449; *Smith v. Wyckoff*, 11 Paige, 49; *Kimball v. Noyes*, 17 Wis., 695. If then the plaintiff had sued Juneau on the note and collected the amount of it, Juneau could have been subrogated to and enforced the mortgage. *White v. Butler*, 13 Ill., 109.

*Lewis & Fribert*, for respondent:

1. No case nor bill of exceptions having been settled, the judgment must be affirmed. R. S., chap. 132, sec. 20; *Merwin v. O'Day*, 9 Wis., 156, and cases there cited; *Conolly v. Conolly*, 16 How. P. R., 224; *Bidwell v. Lament*, 17 id., 357. The finding of the court and the exceptions thereto are no part of the record unless inserted into a case or bill of exceptions. Rule 2, Supreme Court Rules of 1857. 2. The first tax deed was upon a sale made prior to the foreclosure of *Lewis's* mortgage. *Lewis* was under no obligation to pay those taxes. Even if the covenant to pay taxes in the first mortgage was one running with the land, it certainly was not so, *so far as broken* before *Lewis* foreclosed. 1 Smith's L. C., 107, 110; 2 Washb. on R. P. 15, note 17, and 697, note 3. Not being bound to redeem from the tax sale of 1859, *Lewis* was not a trustee of the plaintiff as to said sale, but might lawfully bar him of any interest in the land by taking a tax deed thereon. Can a party holding a subsequent mortgage, after foreclosing it and bidding in the land at the sale, defeat the prior mortgage by purchasing at a sale upon a judgment, mortgage, mechanic's lien or other claim which is paramount to said prior mortgage? There can be no difference in principle, as to this question, between a purchase upon a sale for taxes and upon a sale for any other paramount lien. As to this question counsel cited *Cook v. Fountain*, 3 Swanst., 585; Tiffany & B. on Trustees, pp. 113, 119, 120, and cases there cited; Story's Eq. Jur., §§ 331, 391,

395 ; *Van Epps v. Van Epps,* 9 Paige, 237, 241 ; *Hawley v. Cramer,* 4 Cow., 717 ; *Torrey v. Bank of Orleans,* 9 Paige, 663 ; *Quackenbush v. Leonard,* id., 333, 344 ; *Brice v. Brice,* 5 Barb., 533 ; *Michoud v. Girod,* cited in Tiffany & B., p. 143, and other cases there cited.    See also Story's Eq. Jur., § 520 ; *Gardiner v. Gerrish,* 23 Me., 46 ; *Blakeley v. Bestor,* 13 Ill., 708 ; *White v. Butler,* 13 Ill., 109 ; *Branson v. Yancey,* 1 Dev. Eq., 77.    3. *Lewis,* having paid the consideration for his mortgage without actual notice of the plaintiff's mortgage, could acquire title by tax deed, as against the plaintiff.   *McCammon v. Worrall,* 11 Paige, 99, is directly to the point.    4. *Lewis* having been in possession, claiming title under the tax deed, plaintiff's rights are barred by the statute.    Laws of 1861, ch. 138, secs. 5 and 6 ; *Howell v. Howell,* 15 Wis., 55, 58 ; *Hill v. Kricke,* 11 id., 442, 446 ; *Knox v. Cleveland,* 13 id., 245, 251 ; Tiff. & B. on Trustees, 151–2, and cases there cited.

DOWNER, J.    The respondents insist that as there is no bill of exceptions the judgment of the circuit court must be affirmed, and refer us to *Merwin v. O'Day,* 9 Wis., 156, and New York authorities.    Section 15, ch. 264, Laws of 1860, provides that it shall be necessary to cause a bill of exceptions to be made part of the record *only* when the alleged errors, without the bill, would not appear upon the face of the record.    The finding of the court is a part of the record, and also the judgment ; and if the facts found do not warrant the judgment, the error is apparent without a bill of exceptions.

Are the tax deeds to *Lewis* valid ?    If he held the tax certificate for the taxes of 1858, at the time he purchased the equity of redemption at the foreclosure sale, what was the effect of such sale, and of the deed to him on the certificate ?    It is plain that if any other person had purchased at such sale, he would have acquired all the title and interest of *Lewis* in the premises, and taken them discharged of any tax certificate *Lewis* then held.    We think the same effect as to extinguishing

the tax certificate must be given to the sale and deed to him. If he purchased the certificate after the sale, such purchase was *prima facie* equivalent to a redemption from the tax sale; for when he purchased the equity, he purchased it subject to the tax liens and the first mortgage, and the premises became the primary fund out of which such liens were to be paid. As the owner of the equity, he could redeem from the tax sale; and the right of possession, and, we must presume, possession followed his purchase of it. One who enters into possession of lands, under title, and enjoys the profits thereof, is under obligations to discharge the burdens which the law imposes upon the property for the support of government; and that, according to *Lacey v. Davis*, 4 Mich., 150, whether those burdens already existed as liens when he came into possession, or are thereafter created. This, it is said, is incident to every possession under title or color of title. To the same effect is *Chambers v. Wilson*, 2 Watts' R., 495. As a general rule, the law does not permit one interested in land with others, all deriving their title from a common source, to acquire an absolute title to the land by tax deed, and thus cut off those interested with him. This rule has been applied to tenants in common, mortgagor and mortgagee, so as to prevent the former acquiring tax title to the injury of the latter; and by parity of reasoning, we think, should be extended to the holder of the equity standing in the place of the mortgagor. See *Fuller v. Hodgdon*, 25 Me., 243; 23 id., 46; Blackwell on Tax Tit., 470; 1 Aik., 306; 14 Vt., 532; 11 Ill., 322, 367; *Platt v. St. Clair's heirs*, 6 Ohio, 93. It would be a fraud on the first mortgagee to permit *Lewis*, being in possession of the premises as the owner of the equity of the mortgagor—in possession of the premises which are the primary fund to pay the tax liens—through a tax deed made to him while so in possession, to cut off the rights of the first mortgagee. If *Lewis* purchased the tax certificate for the taxes of 1858 after the foreclosure sale, and it was clearly his intention when he purchased it, and justice required that it

should be kept alive as a lien superior to that of the first mortgage, a court of equity might perhaps so treat it on the foreclosure of the first mortgage; but he ought not to be allowed so to use it as by virtue of the tax laws to extinguish the rights of the mortgagee. If *Lewis* has no valid title under the deed for the taxes of 1858, it is clear that he has none under the subsequent deeds.

The judgment of the circuit court must therefore be reversed.

DIXON, C. J. I concur in the decision, and agree that *Lewis* took no title by the tax deeds; but I place my judgment upon different grounds from those stated in the opinion of Mr. Justice DOWNER, and at the same time I am not prepared to assent to some of his conclusions. I think *Lewis*, as the owner of the equity of redemption, could not receive and hold the certificates of sale as liens upon the mortgaged premises. A man cannot have a lien upon his own estate, unless, under peculiar circumstances, it is kept alive by a court of equity. The lien of the certificates, and all interest under them, was merged upon the transfer to *Lewis*, or upon his acquiring the title to the mortgaged premises. The title to the certificates and the lands being united in the same person, the lands were practically redeemed. It terminated the sales, and restored the estate exactly as it was before the sales took place, except that the taxes for which the sales were made were satisfied. As the successor of the mortgagor, the transfer of the certificates to *Lewis* was in effect the same as if they had been transferred to the mortgagor himself before *Lewis* purchased. No valid deed could therefore be issued. It was like a redemption by the successor in interest of a judgment debtor, which does not have the effect of transferring to him the rights of the purchaser at the sale. *Warren v. Fish*, 7 Minn., 432; *Rutherford v. Newman*, 8 id., 47.

I am not prepared to say that there was anything in the relations of *Lewis* as mortgagee before foreclosure and sale, nor

as purchaser in possession afterwards, the lien of the certificates not having been extinguished, which would have precluded him from acquiring and holding a tax title against the plaintiff upon any sale for taxes levied and assessed before he purchased and took possession. It will be found, on examination of the adjudged cases, that the turning point in all of them was, *the obligation of the party setting up the tax title to pay the taxes.* If he was under such obligation, either from having been in possession and liable to pay the taxes at the time of assessment, or from their having been properly assessed against him, or by reason of any covenant or promise to the party against whom he claimed the title, the deed in such cases has been held unavailing. It is void because it was obtained in violation of the duty of the person claiming title under it. But the mere purchase of the premises from the mortgagor or owner after the assessment and sale and before redemption, or possession of them at the expiration of the time for redeeming, imposes no obligations to pay or redeem (*Gardiner v. Gerrish*, 23 Maine, 46); and it seems that proof alone of possession, even at the time of the levy and assessment, raises no presumption that the party possessed was liable to pay the taxes, and that a deed to such a party is *prima facie* valid. *Blakeley v. Bestor*, 13 Ill., 708. *Lewis* was under no obligation to pay the taxes. He was not bound to keep them down either for his own protection or that of the mortgagor, or of the first mortgagee (*Williams v. Townsend*, 31 N. Y., 415); and consequently he might, under a properly executed deed, have acquired a title valid both as against the mortgagor and first mortgagee, unless there was something in the nature of his purchase at the foreclosure sale which forbade it. If, for example, the certificates had remained in the hands of a stranger, who had in good faith taken title under them and then conveyed to *Lewis*, the title so acquired would have been good as against the first mortgage, unless the circumstance of his purchase at the foreclosure sale would have prevented. Is any such effect to be ascribed to that pur-

Smith vs. Lewis et al.

chase? It is said that he purchased subject to the tax liens and to the lien of the first mortgage, and thus became the holder of an estate or fund out of which those liens were to be primarily satisfied. To a certain extent this is no doubt true; but is it so far true as that he assumed any personal obligation to pay the taxes or the first mortgage? If, instead of purchasing at the foreclosure sale, he had bought the premises of the mortgagor, paying the full value, with no deductions for the taxes or the first mortgage, it would hardly have been contended then, I think, that he might not have acquired title by tax deed which would have been effectual as against the lien of the first mortgage. If, on the other hand, he had purchased of the mortgagor agreeing to pay the taxes and the first mortgage as part of the consideration money, there would have been no doubt as to his personal liability to pay them, and he could have acquired no title by tax deed as against the first mortgage. Is his purchase at the foreclosure sale to be regarded as a purchase of the latter kind? Or may it not be said to have been a question of diligence between creditors, his interest being clearly antagonistic to that of the first mortgagee, and that he purchased intending to take the chances of defeating the lien of the first mortgage by tax deed, in case the first mortgagee, who had the right to redeem and thus protect himself, should fail to do so, but should allow the title to become absolute against him? I am not ready to say that the latter is not the correct view of the transaction, and certainly not that the former is.

COLE, J. On reflection, I am inclined to hold that the purchase of the tax certificate by *Lewis*, under the circumstances, was a practical redemption.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for further proceedings.