BENNETT vs. KEEHN, imp.

*April 9 — May 31, 1883.*

*(1) Merger of tax certificates in legal title. (2) Annulling mortgage for fraud. (3) Rights of grantee of mortgagor.*

1. Where the legal owner of land becomes the owner of tax certificates issued against the same and afterwards releases and quitclaims to another all his estate, title, interest, and claim whatsoever in and to the land, his interest therein by virtue of the tax certificates passes with the legal title by the conveyance and becomes merged in the legal title so that no valid tax deed can thereafter be issued on such certificates.

2. Where the grantee in such conveyance is subsequently induced, by representations that the grantor was not, at the time of the conveyance, the owner of the tax certificates, to execute a mortgage of the land to a person fraudulently claiming a tax title under such certificates, for the purpose of obtaining a release of such claim, he is entitled to have the mortgage annulled and declared void for fraud and want of consideration in its inception.

3. Where a conveyance of mortgaged premises is not, by its terms, subject to the mortgage but purports to convey the whole title, and especially if it contains full covenants of warranty, the grantee, if he has not assumed the payment of the mortgage debt and the amount thereof was not deducted from the purchase money, may interpose the same defenses to the mortgage that the mortgagor might have interposed. *Crocker v. Bellangee*, 6 Wis., 645; *Bensley v. Homier*, 42 id., 631; and *M. & M. Railway Co. v. M. & W. R. R. Co.*, 20 id., 174, distinguished.

APPEAL from the County Court of *Milwaukee* County. The action was brought to foreclose a mortgage executed by the defendant Emma A. Hewitt to one Callie McDonald

(and by her assigned to the plaintiff) on twenty-three lots in certain additions to the city of Milwaukee. The mortgage was given to secure the payment of the promissory note of Mrs. Hewitt to Mrs. McDonald for $1,400. The complaint contains the averments usual in foreclosure actions.

The defendant *Jenny M. Keehn* alone answered the complaint. Being then a minor, she answered by her guardian, J. C. McKenney, Esq. Her answer is, in substance and effect, that Mrs. Hewitt obtained title to all except four of the mortgaged lots by virtue of the settlement of a certain suit in equity in which she was one of the plaintiffs, and Daniel G. Rogers and wife, and George Burnham and wife, with others, were defendants; that pursuant to such settlement the said Rogers and wife, and Burnham and wife, conveyed said lots by deed of release and quitclaim to one McCord, as trustee for the use of Mrs. Hewitt, and McCord, by a like deed, conveyed the same to her; that at the time of the execution of such conveyances there were outstanding fourteen tax-sale certificates, issued by the city of Milwaukee on fourteen of the lots so conveyed to Mrs. Hewitt and covered by the mortgage, and a like number of tax-sale certificates on the same lots issued by the county of Milwaukee, all for the taxes of 1876; and that it was agreed in said settlement that such tax certificates should be surrendered and canceled for the benefit of Mrs. Hewitt.

It is further alleged in the answer, upon information and belief, that at the time the lots were conveyed to Mrs. Hewitt, such certificates were the property and in the possession of said Daniel G. Rogers, but that they were issued to one Milbroth, who at the time was the clerk of Rogers, and that Milbroth bought the certificates for him as his agent and indorsed them in blank,— Rogers then claiming to own the lots covered by them, and then holding title thereto of record; and that Rogers thereafter, in fraud of the rights of Mrs. Hewitt, and while yet in possession of the certificates, wrote,

or caused to be written, over Milbroth's indorsement thereon, an assignment of the same to one U. B. Smith, who well knew all of the facts above stated.

The answer then alleges certain irregularities and frauds in the proceedings to obtain deeds upon such certificates, the issue of tax deeds thereon to said U. B. Smith on June 28, 1880, without the knowledge of Mrs. Hewitt, and the recording of such deeds, and proceeds as follows: " That afterwards, and on the 11th day of March, A. D. 1881, as this defendant is informed and believes, the said U. B. Smith and the said Daniel G. Rogers falsely and fraudulently represented and pretended to one J. E. Wildish, who was acting as the agent of the said Emma A. Hewitt in said city of Milwaukee, that said U. B. Smith was the owner and holder of a valid tax title upon her said real estate, and induced and procured said Wildish to write to said Emma A. Hewitt, the said Wildish being an attorney at law, among other things, that the said tax proceedings seemed to be regular, and if so there was no help, and that she had better give said U. B. Smith $1,400, and that, if suit was brought to set aside the said tax deeds, it would have to be done right away, before the 28th of March, A. D. 1881, all of which was untrue, and, as this defendant is informed and believes, to the knowledge of the said Daniel G. Rogers and the said U. B. Smith; but that the said Emma A. Hewitt, not knowing the facts in reference to said tax certificates, tax deeds, and affidavits, and relying wholly upon the advice of the said Wildish, and believing the statements written to her by him as aforesaid, on the 1st day of April, A. D. 1881, executed the note and mortgage mentioned in the complaint and sent the same to said Wildish to obtain a release of said pretended tax-title claim of said U. B. Smith, and for no other consideration, and that said mortgage and the note therein mentioned were given without consideration, and were obtained by the fraudulent acts and doings aforesaid, and are wholly void."

It is further charged therein, on information and belief, that Mrs. McDonald paid no consideration for the mortgage, and the same was never delivered to her; that Smith, as attorney in fact for Mrs. McDonald, assigned the mortgage to the plaintiff, who knew nothing of the transaction, and paid no consideration for such assignment; that all this was done at the instance of Mr. Rogers, to whom the note, mortgage and assignment were delivered; and that neither Mrs. Hewitt, her husband, nor the answering defendant are indebted upon the note or mortgage to the plaintiff or any other person, in any sum whatever.

Then follow averments that the defendant *Jenny M. Keehn* is the owner of all the mortgaged lots except one; that she obtained her title thereto by warranty deed, in the usual form of such deeds, from George Far and wife; and that they obtained their title by a like warranty deed theretofore executed to them by Mrs. Hewitt and her husband.

The answer closes with the following allegations: " This defendant never promised, covenanted, or agreed, in any manner or form whatsoever, to assume the payment of said mortgage debt, nor did she receive said conveyance to her of said real estate subject to said mortgage; and, as she is informed and believes, her grantors, the said George Far and Belle Far, in no manner bound themselves to pay said mortgage debt, and made no contract, covenant, or agreement, or did any act, which in anywise precludes this defendant from setting up the fraudulent character and want of consideration of said mortgage as a defense in this action."

The plaintiff interposed a general demurrer to the answer, which the court sustained. The defendant *Jenny M. Keehn* appeals from the order sustaining the demurrer. ·

The cause was submitted for the appellant on the brief of *J. C. McKenney.*

For the respondent there was a brief by *E. P. Smith* and *D. G. Rogers,* and oral argument by *Mr. Smith.* To the

point that all rights and remedies arising from any fraudulent practices resulting in the execution of the note and mortgage were personal to Mrs. Hewitt, and were incapable of transfer, they cited: *Pomeroy v. C. & M. R. R. Co.*, 25 Wis., 641; *Kutz v. McCune*, 22 id., 628; *Pick v. Rubicon Hydraulic Co.*, 27 id., 441; *Sabine v. Johnson*, 35 id., 185; *Crocker v. Bellangee*, 6 id., 645; *Mil. & Minn. Railway Co. v. Mil. & W. R. R. Co.*, 20 id., 174; *Wood v. Downes*, 18 Ves., 120; *Prosser v. Edmonds*, 1 Younge & C., 481; *Hill v. Boyle*, L. R., 4 Eq. Cas., 260; *Morrison v. Deaderick*, 10 Humph., 342; *Marshall v. Means*, 12 Ga., 61; *Brush v. Sweet*, 38 Mich., 574; 1 Perry on Trusts, sec. 69 and note 1; Story's Eq. Jur., sec. 1040; *French v. Shotwell*, 5 Johns. Ch., 555; *Upton v. Basset*, Cro. Eliz., 445. The authorities as to the right of a vendee to question a usurious mortgage are all founded on the fact that the statute makes the transaction *absolutely* void, and it is only where there is an assumption of its payment that the vendee, on principles of equity, as having reserved its amount out of the purchase money, is estopped from denying it. 1 Jones on Mortg., 744, 745; *Shufelt v. Shufelt*, 9 Paige, 137. A purchaser taking title subsequent to a mortgage, even if he has not assumed its payment, is estopped from questioning its validity. 1 Jones on Mortg., sec. 744; 2 id., secs. 1491–92; *Thomas v. Mitchell*, 27 Wis., 417; *Cleveland v. Southard*, 25 id., 479; *Sands v. Church*, 6 N. Y., 347; *Hartley v. Harrison*, 24 id., 170.

LYON, J. It is alleged in the answer that when the tax certificates were issued which are the basis of the tax deeds to Smith, Mr. Rogers held the record title to the lots covered by such certificates and deeds; that is to say, he was the legal owner of such lots. This allegation is understood to be direct and positive. It is also averred, on information and belief, that when such lots were conveyed by Rogers and Burnham to the mortgagor — the defendant Emma A.

Hewitt — Mr. Rogers owned such certificates. If these are the facts (and on demurrer they stand admitted) the interest in the lots which Rogers held by virtue of the tax certificates, passed with the legal title by his conveyance to Mrs. Hewitt, for by that conveyance he released and quitclaimed to her all his estate, right, title, interest, and claim whatsoever in and to the lots. The interest created by the tax certificates thus became merged in the legal title, and no valid tax deeds could be issued upon the certificates. Especially could no valid deeds issue to Smith, because he had knowledge of all the facts which rendered the certificates inoperative for any purpose, except to show that the tax had been paid or the lots redeemed from the tax sale. This result must follow without any regard to the alleged agreement of Burnham and Rogers with Mrs. Hewitt, that the tax certificates should be canceled and surrendered for her benefit.

On this subject the language of DIXON, C. J.,— the present chief justice concurring,— in *Smith v. Lewis*, 20 Wis., 350, is closely applicable. He says: " I think Lewis, as the owner of the equity of redemption, could not receive and hold the certificates of sale as liens upon the mortgaged premises. A man cannot have a lien upon his own estate unless, under peculiar circumstances, it is kept alive by a court of equity. The lien of the certificates, and all interest under them, were merged upon the transfer to Lewis, or upon his acquiring the title to the mortgaged premises. The title to the certificates and the lands being united in the same person, the lands were practically redeemed. It terminated the sales and restored the estate exactly as it was before the sales took place, except that the taxes for which the sales were made were satisfied. As the successor of the mortgagor, the transfer of the certificates to Lewis was in effect the same as if they had been transferred to the mortgagor himself

before Lewis purchased. No valid deed could, therefore, be issued."

We conclude the answer sufficiently shows that the tax deeds to Smith were absolutely void, and hence, although there is no allegation that Smith executed to Mrs. Hewitt any conveyance of the lots covered by such deeds, the legal title thereto was held by her when she executed the mortgage in suit thereon, under her conveyance from Burnham and Rogers.

It does not follow, however, that the mortgage executed by Mrs. Hewitt to Mrs. McDonald is also void, although she may avoid it for fraud or want of consideration. If it was executed with knowledge of all the facts, in settlement of a claim to the lots made in good faith by Smith under his tax deeds, it is valid, and Mrs. Hewitt cannot avoid it merely because the claim of Smith was not in fact well founded. This doctrine is elementary. But the averment is, in substance, that Smith knew his tax deeds were invalid and conveyed no interest in the lots, and hence his claim was not made in good faith. Again, notwithstanding the criticisms by the learned counsel for the plaintiff of those portions of the complaint in which it is sought to charge Smith with fraud in obtaining the mortgage, we think the complaint sufficiently charges that Mrs. Hewitt was induced to execute it under the false pretense that Mr. Rogers was not the owner of the tax certificates at the time alleged. Almost necessarily that must be the significance of his claim to Mrs. Hewitt's agent, Mr. Wildish (whose integrity in the matter no one questions), that he owned the lots by valid tax deeds, and which claim Mr. Wildish communicated to Mrs. Hewitt (who resided in Minnesota), at the request of Smith. No diligence which the law required of Mrs. Hewitt would have been likely to disclose the falsity of such claim. Smith took the mortgage as the agent of Mrs. McDonald, and his knowl-

edge of the fraud practiced on Mrs. Hewitt is imputable to the principal, Mrs. McDonald. Besides, it is alleged that neither Mrs. McDonald nor her assignee, the plaintiff, ever paid any consideration for the mortgage.

We think these averments, if true, would entitle Mrs. Hewitt to have the mortgage annulled and declared void for fraud and want of consideration in its inception.

It remains to be determined whether the appellant, who is the grantee of Mrs. Hewitt of the mortgaged lots through mesne conveyances, can defend against the mortgage on the same grounds, or, in other words, whether the defense to the mortgage which Mrs. Hewitt might have interposed, is available to her grantee, under the circumstances stated in the answer. To this question the arguments of counsel were principally directed.

Counsel for plaintiff strongly relies upon the case of *Crocker v. Bellangee,* 6 Wis., 645, to support the proposition that the alleged fraud upon Mrs. Hewitt in procuring the mortgage in suit, and the want of consideration for such mortgage, are not available to the appellant as defenses thereto. In that cause one Casey, the owner of the land in controversy, conveyed the same to Bellangee. It is alleged that the latter obtained such conveyance by fraud. Upon discovering the fraud Casey conveyed the same land to Crocker by deed containing full covenants of warranty. Crocker thereupon filed his bill in equity against Bellangee, stating the above facts, and praying among other things that the deed from Casey to Bellangee might be declared fraudulent and void, and decreed to be delivered up and canceled. This court affirmed an order of the circuit court sustaining a demurrer to the bill on the ground that it showed no right in Crocker to maintain it. The opinion of the court was written by Chief Justice WHITON, and it appears therefrom that the judgment went upon the grounds that the conveyance to Bellangee was not void, but at most only voidable;

that it passed to Bellangee the whole of Casey's title to the land which it purported to convey; that the subsequent deed to Crocker did not avoid such conveyance and divest Bellangee's title; and hence that Crocker acquired no title by virtue of Casey's deed to him. It is there said: "The cases referred to by the defendant have satisfied us that the proper course for Casey to pursue was to avoid the deed by a bill in equity against Bellangee. But we do not see how the complainant Crocker can be permitted to set up the fraud of Bellangee in obtaining his deed, for the reason that he acquired no title to the land by his conveyance, if the views above expressed are correct." The turning point of the case seems to have been that Crocker, the complainant, had no title to the land in question. In view of the cases there cited by counsel, to which reference is made in the opinion, it is manifest that had the court regarded (as it evidently did) the warranty deed to Crocker as an assignment by Casey to him of the right to maintain a bill in equity to set aside the conveyance to Bellangee, the decision would have been the same.

One of these cases is *Prosser v. Edmonds*, 1 Younge & C., 481, decided by the court of Exchequer in 1835. It is the recollection of the present chief justice that it was cited by the late Mr. Waldo in his very learned argument in *Crocker v. Bellangee*, but by some oversight has been omitted from the report of his argument. It is a leading case on the subject, and the opinion by the lord chief baron states the rule and its limitations clearly and forcibly. Lord ABINGER there says: "Where an equitable interest is assigned, it appears to me that in order to give the assignee a *locus standi* in a court of equity, the party assigning that right must have some substantial possession, some capability of personal enjoyment, and not a mere naked right to overset a legal instrument. . . . It has been the opinion of some learned persons that the old rule of law that a chose in

action is not assignable, was founded on the principle of the law not permitting a sale of a right to litigate. That opinion is to be met with in Sir William Blackstone and the earlier reporters. Courts of equity, it is true, have relaxed that rule, but only in the cases which I have mentioned, where something more than a mere right to litigate has been assigned. Where a valuable consideration has passed, and the party is put in possession of that which he might acquire without litigation, there courts of equity will allow the assignee to stand in the right of assignor. This is not that case. Robert Todd, when he assigned, was in possession of nothing but a mere naked right. He could obtain nothing without filing a bill. No case can be found which decides that such a right can be the subject of assignment either at law or in equity."

The case of *Dickinson v. Burrell*, L. R., 1 Eq. Cas., 337, decided by Lord ROMILLY, Master of the Rolls, in 1865, is a striking illustration of the understanding by the later English courts of the scope and effect of the general rule laid down in *Prosser v. Edmonds*. The case was this: A. having executed a conveyance of real estate to B., which was liable to be set aside on equitable grounds, afterwards made a voluntary settlement of the same property in trust for himself for life, with remainder to his children as he should appoint, and in default of appointment to all his children who should attain twenty-one, or (being daughters) should marry, in equal shares. Without overruling or expressing any dissatisfaction with the doctrine of *Prosser v. Edmonds*, Lord ROMILLY distinguished it from the case before him, and held that the infant children of A. could maintain a bill, making A. and the trustees of the settlement parties, to set aside the conveyance to B. Many of the cases cited on behalf of the plaintiff are but illustrations of the application of this general rule that an assignment of a bare right to file a bill in equity to cancel and annul a legal instrument for fraud, is contrary to public policy and void. But this is not such a

case.   We have already seen that the answer of the appellant shows that Mrs. Hewitt owned the mortgaged lots in fee, and hence the appellant obtained that title by virtue of her conveyance from the Fars, the grantees of Mrs. Hewitt. Having the title in fee, the appellant has at least the constructive possession, and is entitled to the actual possession of the lots.   The answer does not expressly state the consideration paid by the appellant or by her grantors for the lots, but all of the averments of the answer bearing upon the subject go to negative the theory that the conveyances may have been mere gifts.   It would have been better and safer pleading to have stated the consideration, but we are inclined to hold it fairly inferable from the answer that a valuable consideration was paid for each conveyance.   We think this construction best accords with the liberal rule in that behalf which now prevails.

The appellant being the owner of the lots in fee, for which she paid a valuable consideration, and being in constructive possession and entitled to the actual possession thereof, the case is within the rule laid down in *Prosser v. Edmonds*, and applied in *Dickinson v. Burrell*, unless there is some other rule of law which deprives the appellant of the right to defend against the mortgage in suit.   The rule first referred to is thus stated: "Where a valuable consideration has passed, and the party is put in possession of that which he might acquire without litigation, there courts of equity will allow the assignee to stand in the right of the assignor."

It remains to determine whether there is any other rule of law which renders this defense of fraud and want of consideration in the inception of this mortgage unavailable to the appellant.   There is a class of cases wherein the fraud has been expressly waived by the party defrauded before assignment, in which it has been held that the defense of fraud is not available to the assignee.   *French v. Shotwell*, 5 Johns. Ch., 555, and *Graham v. Railroad Co.*, 102 U. S., 148,

belong to this class. In the present case there was no such waiver.

In *Bensley v. Homier*, 42 Wis., 631, which was an action to foreclose a mortgage, this court held that a junior judgment creditor of the mortgagor cannot make the defense for himself that the mortgage is void for usury, the mortgagor not defending. But it was left undetermined whether such creditor may reduce the mortgage debt to the amount for which it ought to stand in equity, or cancel it on payment of such amount. That judgment went upon special grounds peculiar to the defense of usury, as will be seen by a perusal of the opinion of the late chief justice, and furnishes no rule which can properly be applied in a case like this. But see *Newman v. Kershaw*, 10 Wis., 333; *Ludington v. Harris*, 21 Wis., 239.

Counsel for plaintiff relies upon the decision of this court in *Mil. & Minn. Railway Co. v. Mil. & W. R. R. Co.*, 20 Wis., 174, to support his position. The La Crosse & Milwaukee Railroad Company divided its railroad into three divisions, and mortgaged two of them for $1,000,000. It sold one of the mortgaged divisions to the defendant company, and that company assumed and agreed to pay $283,000 of the mortgage debt. Afterwards the La Crosse & Milwaukee Company mortgaged the whole line, consisting of the two remaining divisions, for $2,000,000. The latter mortgage was made expressly subject to the $1,000,000 mortgage. The $2,000,000 mortgage was foreclosed, the mortgaged property was bid off at the foreclosure sale by the bondholders for whose security it was given, and the purchasers thereupon organized the plaintiff company. The defendant failing to pay the $283,000 as agreed, the plaintiff brought the action to set aside a supposed release of the defendant by the La Crosse & Milwaukee Company from the payment of such money (which release it is alleged was obtained by fraud), also to sequestrate the earnings of de-

fendant's railroad towards the payment thereof, and for a sale of such railroad, and the application of the proceeds to the same purpose. This court held that the complaint in which the above facts are stated did not state a cause of action in favor of the plaintiff. The opinion was prepared by the present chief justice. Reference is made therein to the cases of *Crocker v. Bellangee* and *Prosser v. Edmonds, supra*, but it is not held that the rule of those cases is applicable to the case there under consideration. It is intimated, but not decided, that the terms of the mortgage under which the plaintiff company claimed, were not sufficiently broad to include and transfer the right of action against the defendant on its covenant to pay part of the $1,000,000 mortgage. The court also declined to determine the effect of the clause in the $2,000,000 mortgage expressly making it subject to the prior mortgage. Passing by all of these questions, practically assuming their solution for the purposes of the case in favor of the plaintiff, the court held the complaint bad on the sole ground that it contained no allegation that the right of action which the La Crosse & Milwaukee Company had against the defendant on its covenant to pay part of the mortgage debt, was sold at the foreclosure sale under which the plaintiff claims, or that the price bid for the mortgaged property at such sale was in anywise dependent on the existence of that covenant.

It requires no argument to prove that the decision in that case furnishes no rule by which the present case can be determined. A statement of the case, and of the point decided, is all that is necessary.

In 1 Jones on Mortg., secs. 744–6, the doctrine is stated that one who purchases lands upon which there is an outstanding mortgage, without any deduction from the price on account of it, and does not take his conveyance subject to the mortgage debt, or assume to pay the same, may interpose the same defenses to the mortgage that the mortgagor

might have interposed. Any purchase of lands upon which there is a valid subsisting mortgage, is, in one sense, subject to the mortgage. *Tanguay v. Felthousen,* 45 Wis., 30. But that is not the sense in which the term is used in the treatise above cited. If the conveyance of the mortgaged premises is not expressed to be subject to the mortgage, but by its terms purports to convey the whole title, if the grantee does not assume the payment of the mortgage debt, and the amount thereof is not deducted from the purchase money, the grantee does not take his title subject to the mortgage in that sense which prevents him from defending against it for fraud or want of consideration. And this is especially true, if the conveyance contains full covenants of warranty. Indeed, it was held in *Ludington v. Harris,* 21 Wis., 239, that (quoting the head-note) " a grantee of land by quitclaim deed for one dollar, may defend against his grantor's mortgage for usury, there being no other evidence that he had agreed to pay the mortgage debt, or have it paid out of the land." Whether or not that case is in conflict with *Bensley v. Homier, supra,* in respect to the defense of usury, must be determined when the question is properly presented. However that may be, *Ludington v. Harris* is authority in this case as respects the defenses here interposed.

It should be remarked here that the case of *Weed S. M. Co. v. Emerson,* 115 Mass., 554, cited and relied upon by counsel for the defendant to sustain the answer, is not in point, for the reason that the mortgage which the grantee of the mortgagor was there permitted to attack, was absolutely void. This feature of the case seems to have escaped the attention of the learned author of the treatise above cited, who refers to the case in a note to sec. 746.

We conclude that the appellant has made a case by her answer which entitles her to stand in the right of Mrs. Hewitt and defend against the mortgage on the grounds

alleged, and that she states facts which, if established, will invalidate the mortgage. It follows that the demurrer to such answer should have been overruled.

*By the Court.*— Order reversed, and cause remanded for further proceedings according to law.