BLANCHE HARRELL, APPELLANT, v. WALTER J. SURFACE, HAZEL R. SURFACE, RUSSELL DESCHAMP, MAYME DESCHAMP, HIMMELBERGER-HARRISON LUMBER COMPANY, A CORPORATION, HENRY BURLOCK AND BERT WALKER, RESPONDENTS.—165 S. W. (2d) 322.

St. Louis Court of Appeals. Opinion filed November 4, 1942.

*Merrill Spitler, R. F. Baynes* and *Harry Bock* for appellant.

*Robert A. Dempster* and *Bailey & Bailey* for respondents.

ANDERSON, J.—This is a suit to foreclose a deed of trust and for other relief. The trial court found for defendants and entered a judgment dismissing plaintiff's suit, whereupon plaintiff appealed.

The petition alleged that on September 17, 1927, the defendants Walter J. Surface and Hazel R. Surface, his wife, being the owners of certain real estate (farm land described in said petition), duly executed a deed of trust, whereby they conveyed said real estate to W. P. Oliver, trustee, to secure the payment of an indebtedness of said defendants to John F. Lilly and Blanche Harrell, which indebtedness was evidenced by a promissory note in the principal sum of $1814, dated September 17, 1924, and payable on or before ten years after the date thereof.

The petition further averred that said note was not paid at maturity, and that the principal sum, and interest from the date of said note, were due.

The petition then alleged that after the execution and before the maturity of said note, same was assigned and endorsed to plaintiff by the said John F. Lilly, and that plaintiff became and at the time of the filing of this suit was the holder of said note.

The petition then averred that defendants Russell Deschamp and Mayme Deschamp had or claimed some interest in, or lien upon, the premises described in the deed of trust, the precise nature of which was to plaintiff unknown, but that whatever rights said defendants Russell Deschamp and Mayme Deschamp might have were inferior

and subject to plaintiff's rights in and to said property; that the defendant Himmelberger-Harrison Lumber Company claimed an interest in said property by reason of a deed of trust, but that said rights so claimed were subject to and inferior to plaintiff's prior claim; that defendants Henry Burlock and Bert Walker claimed some interest in said real estate, but whatever rights or interest they had were subject to the prior rights of plaintiff.

The petition prayed: (a) for a decree for the amount of said debt; (b) that any interest, lien, or equity of redemption of the defendants or anyone claiming under them be foreclosed; (c) that said premises be ordered sold and the proceeds of the sale applied, first, to the payment of the costs and expenses of this action; and second, to the payment of said debt and interest; (d) that defendants Walter J. Surface and Hazel R. Surface be adjudged to pay plaintiff any deficiency that might remain on said note after the application of the proceeds of the sale to it; and (e) general relief.

Thereafter the defendant Himmelberger-Harrison Lumber Company filed an answer averring that it was asserting no right, title, claim or interest in the premises.

Defendant Russell Deschamp filed a separate answer, in which he alleged that the land in question was sold for taxes under the so-called Jones-Munger Act, on November 3, 1937, to Harry Woodruff and Emma Woodruff, and that the usual certificate of sale was on said date delivered to said purchasers by the Collector of Revenue of Stoddard County; that on June 2, 1938, for valuable consideration, said certificate was assigned to defendant Russell Deschamp.

Said answer of Russell Deschamp further alleged that on November 24, 1939, after the two-year period of redemption had expired, said Russell Deschamp presented said certificate to the Collector of Stoddard County, and said Collector executed and delivered to him a deed to said land, under which deed Russell Deschamp became the owner in fee of the land in controversy free from the alleged lien which plaintiff sought to have foreclosed in this suit.

Said answer further averred that plaintiff, if she held said alleged lien, failed at any time between November 3, 1937, and November 24, 1939, to redeem the land in controversy, and because of her laches in failing to redeem, she was barred and estopped from foreclosing said alleged lien.

The answer prayed that the court deny plaintiff the right to foreclose said lien and that the suit be dismissed at plaintiff's costs.

Defendant Mayme Deschamp for answer filed a general denial.

No answer appears for defendants Henry Burlock and Bert Walker.

The facts developed at the trial were as follows:

On September 17, 1924, appellant Blanche Harrell and John Lilly, as owners of the real estate involved in the suit, consisting of 80 acres of land situated in Stoddard County, Missouri, sold said land to

Walter J. Surface. As part payment of the purchase price Surface and his wife executed a promissory note for $1814, payable to Blanche Harrell and John Lilly on or before ten years from date, and secured the note with a deed of trust on the land purchased. No payments were ever made on the note, and the deed of trust securing same is the one sought to be foreclosed by this suit.

Sometime after the execution of the note, appellant and Lilly endorsed and delivered the note to Dr. Fristoe, to hold as collateral security to an obligation owed to him by appellant. Dr. Fristoe retained possession of the note until shortly before this suit was filed, when it was delivered to appellant.

On November 4, 1935, The Little River Drainage District instituted proceedings against the land in question to enforce collection of delinquent taxes due it for the years 1930, 1931, 1932, 1933, and 1934, but neither appellant nor Dr. Fristoe were made parties. Said suit went to judgment and the land was sold under the judgment on December 8, 1936, to Cornucopia Farms, Inc., for $266.

Thereafter, and on November 3, 1937, the land was again sold (third sale), this time by the Collector of Revenue of Stoddard County for delinquent state and county taxes amounting to $428.19.

Harry Woodruff and Emma Woodruff, who bid $50, bought the land at said sale, and secured a certificate of purchase in the usual form.

On January 10, 1938, Cornucopia Farms, Inc., who purchased at the drainage tax sale, conveyed the land to M. G. Gresham, and, on the same day, Gresham conveyed by warranty deed to respondents Russell and Mayme Deschamp, the consideration recited in said deed being $1.00 and other valuable considerations. The deed carried internal revenue stamps in the sum of $1.00.

On June 2, 1938, the Woodruffs, who purchased at the Jones-Munger sale, assigned their certificate of purchase to respondent Russell Deschamp, and on November 24, 1939, two years after the issue of the certificate of purchase, the Collector of Stoddard County executed his collector's deed to respondent Russell Deschamp, assignee of the certificate of purchase.

The trial court found that any rights the plaintiff might have had in the deed of trust have been extinguished by the tax sales under superior liens made subsequent to the execution of the deed of trust. In her assignment of errors, appellant complains of this finding and of the action of the court in dismissing the case based upon this finding.

We believe that there is merit to appellant's complaint as to the sale under the so-called Jones-Munger law. Under the decisions, the only effect of the transaction wherein defendants purchased the certificate of sale from Harry Woodruff and Emma Woodruff was a redemption of the land from the said tax sale. This seems to be the

effect of the holding of our Supreme Court in Kohle v. Hobson, 215 Mo. 213, 114 S. W. 952. In that case plaintiff and the wife of defendant were heirs at law of Winnefred Kohle, who died owning certain real estate. At the time of Mrs. Kohle's death the property was subject to the lien of certain city taxes, and later was sold at a tax sale. A certificate of purchase was issued to the buyer, one Latimer, under which certificate Latimer was entitled to a collector's deed at the expiration of a two-year redemption period. The defendant purchased this certificate at private sale from Latimer. The Supreme Court held that the defendant was to be treated exactly as defendant's wife would have been treated had she purchased the certificate, and that she, being a co-tenant with plaintiff, held equitable title under the certificate in trust for herself and the plaintiff subject to a purchase money lien. The court also held that the purchase of a tax certificate amounted to nothing more than a redemption of the land. The court, speaking through BURGESS, J., said:

". . . Moreover, the purchase by the defendant from Latimer, the tax purchaser, before he obtained a deed, and before the time for redemption had expired, did not invest him with any new title or interest. The transaction was nothing more than a redemption of the land, but as the defendant paid the purchase money and took an assignment of the certificate of purchase, he is entitled to a lien upon the land to compel contribution. [Black on Tax Titles (2 Ed.), sec. 284; Lomax v. Gindele, 117 Ill. 527, 7 N. E. 483.] In the case last cited it is held that, where one of the tenants in common of a tract of land which had been sold for taxes, instead of redeeming directly from the sale, made an agreement with the holder of the certificate of purchase that the latter should take out a tax deed thereon and then convey the premises to the former, which was done, the transaction amounted to but a redemption for the benefit of both tenants in common, and that a court of equity would compel the one taking a conveyance of the tax title to convey to the other one undivided half of the tax title upon payment of half the cost thereof. The certificate of purchase did not, of course, pass the title, but only entitled the purchaser, or the defendant as his assignee, to a deed passing the title at the expiration of two years from the time of the tax sale, during which time any of the co-tenants had the right to redeem the land; and defendant's purchase of the certificate of purchase, as before stated, amounted to nothing more than a redemption from that sale, and inured to the benefit of his wife and her co-tenants."

The foregoing case is in line with the weight of authority.

Manning v. Bonard, 87 Iowa, 648, 54 N. W. 459, was a suit by the owner of a deed of trust to foreclose same. The material facts were: After the execution of the notes and deed of trust by the owner, Robinson, the land was sold to Miller & Thompson at a tax sale.

Thereafter one Van Wagener became the owner of Robinson's interest in the land by virtue of a sheriff's deed after sale under a judgment against Robinson. Subsequent to securing the sheriff's deed, Van Wagener took an assignment of the tax certificate from Miller & Thompson, and later secured a tax deed on said certificate. It was held that the assignment of the tax certificate to Van Wagener operated as a redemption from the tax sale, and that the tax deed was invalid. The court affirmed the judgment of the trial court granting the relief prayed by plaintiff, and in its opinion said:

". . . We are therefore required to determine the effect of that assignment. The appellee contends that it operated as a redemption of the land from the tax sale; while appellant insists that Van Wagener was under no obligations to pay the taxes for which the land was sold; that it was not his duty to redeem from the sale; and that he had a right to regard the interest he acquired by virtue of the assignment of the certificate as separate and distinct from the title he obtained through the sheriff's deeds."

"Neither Van Wagener nor his assignors, Miller & Thompson, had any interest in the land when it was sold for taxes, and owed no duty to the state to pay those for which it was sold. When the certificate of sale was assigned by Miller & Thompson, they owned a judgment which was rendered in their favor, and against Robinson, in May, 1887, for $160.49, and costs; and it was a part of the contract under which the assignment was made that, in case the mortgage of plaintiff was defeated, the amount of that judgment was to be paid to the assignors. Neither the ownership of that judgment, nor the conditional agreement to pay it, created any liability to pay taxes, or to redeem from tax sales. But Van Wagener owned the land when the certificate was transferred to him, subject to the mortgage owned by plaintiff; and although he was under no personal obligations to protect that mortgage, nor to redeem from the tax sale, yet he had no right to defeat the mortgage by procuring title through the sale. As owner of the land, and also as owner of the decree rendered in favor of Wilson, Ely & Son, he had a right to redeem from the sale."

The court then reviews the authorities holding that an owner of land or his vendee cannot defeat the rights of a mortgagee by purchasing a tax title, and concluded:

"Although the cases cited were not in all respects alike, yet we think each was governed to some extent by a rule of general application, which must control in this case. We conclude that the assignment of the certificate to Van Wagener operated as a redemption from the tax sale, and that the tax deed was invalid."

Bowman et al. v. Eckstien, 46 Iowa, 583, contained the following facts: On October 3, 1870, the defendant, county treasurer, sold 40 acres of land to Estes for delinquent taxes of 1869. The treasurer

made a mistake in selling for the 1869 taxes, as taxes were due for the ten years previous. The plaintiffs, Bowman and Smith, were the owners of the land, having acquired title after the sale. They thereafter took an assignment of the tax sale certificate and then brought this *mandamus* suit to compel the county treasurer to execute a deed to them. There was a verdict and judgment for defendant, which was affirmed on appeal, the court holding that the taking of the assignment of the tax sale certificate merely operated as a redemption. The court said:

"The evidence shows that Estes, the purchaser at the tax sale was notified by the defendant that the sale was erroneous, and made through mistake, and the necessary amount to satisfy the claim of Estes was tendered to him. Walter W. Smith was the holder of the patent title to the land, and conveyed the same to the plaintiffs by warranty deed, on the 14th day of November, 1871. Bowman, one of the plaintiffs, within a few days after the conveyance of the land to him and his co-plaintiff, made an examination as to the taxes thereon, and then learned of the delinquent taxes for the years prior to 1869. After this plaintiffs purchased the tax sale certificate from Estes, and took his assignment thereof.

"Under these circumstances we are of opinion that the assignment of the certificate of sale to the plaintiffs was, in its legal effect, a redemption by the owners of the land from the tax sale, and that if the defendant were to execute a deed to the plaintiffs, it would have no greater effect or force than a certificate of redemption.

"It is true these plaintiffs acquired title to the land in question after the tax sale. It was, however, before the expiration of three years from the sale. We think they are precluded from acquiring a tax title to the land so as to defeat the payment of prior taxes thereon to the same extent as though they were the owners at the time of the levy of the taxes. [See Stears v. Hollenbeck, 38 Iowa, 550, and cases there cited; Smith v. Lems et al., 20 Wis. 370.]"

In Prizer v. Taylor, 44 Pac. 902, 3 Kan. App. 690, it appears that on March 16, 1891, N. Rosenberg purchased certain land at a sheriff's sale, receiving a sheriff's deed on May 13, 1891. On February 10, 1892, N. Rosenberg and E. P. Rosenberg, his wife, made a deed to E. P. Rosenberg, and on March 28, 1892, a deed from E. P. Rosenberg and N. Rosenberg was executed conveying the land to plaintiff.

It further appears that on September 3, 1889, the land was sold for delinquent taxes to William Logan, to whom a tax certificate was duly issued. On May 4, 1891, Logan transferred said certificate to N. Rosenberg. Thereafter the name of N. Rosenberg in the assignment of certificate was erased and the name of E. A. Prizer inserted. On such certificate a tax deed was executed to Prizer on September 7, 1892, and the question presented was whether the tax

deed gave title superior to that of plaintiff. It was held that the securing of the tax certificate by N. Rosenberg amounted only to a redemption from the tax sale and the tax deed issued thereon was invalid. The court said:

". . . At the time N. Rosenberg secured the transfer of the tax-sale certificate, he was the purchaser of the land upon which such certificate was issued, only lacking the sheriff's deed, as evidence of his title, to be absolute owner thereof. Under such circumstances, he was not in a position to acquire a tax title, and the purchase by him of such certificate will, as against this plaintiff, be held to be a payment of the delinquent taxes, and a redemption of the land from the tax sale. [Keith v. Keith, 26 Kan. 26; Jones v. Commissioners, 30 Kan. 278, 1 Pac. 76; Miller v. Zeigler, 31 Kan. 417, 2 Pac. 601.] . . . As the transfer of the tax-sale certificate to Rosenberg was, in legal effect, a redemption of the land from the tax sale, the tax deed issued thereon was invalid."

Lane v. Wright et al., 121 Iowa, 376, 96 N. W. 902, was a suit to quiet title. The plaintiff, Lane, and the appellee, Wright, were severally holders of judgment liens upon the land in controversy, the former being senior in point of time. Under an execution entered upon the junior judgment, the land was sold to Wright on June 20, 1896. In the following year, under execution entered upon the senior judgment, the same land was sold to Lane, who took a sheriff's deed therefor January 26, 1899. At the date of the sheriff's sale to Wright there was an outstanding and unredeemed sale of land for taxes, the certificate of which was held by one Tris. Wright did not take a sheriff's deed under his execution sale, although no redemption therefrom was ever made, but took an assignment of the certificate of tax sale, upon which the county treasurer issued a tax deed January 3, 1898. Thereafter, and before plaintiff filed suit, Wright conveyed the land by quit-claim deed to the defendant Richart. It was held that the purchase of the certificate of tax sale by Wright should be treated as a redemption, and that the tax deed issued to him on such certificate should be declared void, and that Richart, who held under a quit-claim deed from Wright, occupied no stronger position in the controversy than his grantor. The court said:

"We regard it as a well-settled proposition under the decisions of this court that, where several persons hold claims which are liens upon the same land, equity will not permit one of the lienholders to absorb the common fund by purchasing the land at tax sale."

The court then reviews the authorities, and continues:

"In each one of the cited cases there was no legal obligation to pay the taxes resting upon the party asserting the tax title, but in each it was held that a person having the right to redeem from tax sale cannot, by refusing or neglecting to exercise that right and becoming a purchaser at the sale, extinguish the liens held by others

upon the property so obtained. . . . The principle which involves the rule denying the right of one lienholder to obtain a tax title to the disadvantage of others in similar relation to the common security seems to be that, as the law gives each of them the right to protect the security by making a redemption, and gives the redemptioner a preferred lien to the extent of his disbursement for that purpose, it would be inequitable to permit him to waive such right and become a purchaser at the sale, and thus, by an expenditure not greater than would have been required to pay the tax, exclude his fellow lien-holders from all participation in the common fund. The proposition seems to be entirely just, while the opposite rule would often bring about manifestly inequitable results."

In Smith v. Lewis et al., 20 Wis. 350, a second mortgagee purchased on foreclosure of his mortgage. Thereafter he took an assignment of tax certificates, and later a deed was issued to him. Held, that he did not acquire an absolute title free from the lien of the first mortgage; that the assignment to him of the tax certificate must be regarded, *prima facie,* merely as a redemption of the land from the tax sale. The court said:

"If he purchased the certificate after the sale, such purchase was *prima facie* equivalent to a redemption from the tax sale; for when he purchased the equity, he purchased it subject to the tax liens and the first mortgage, and the premises became the primary fund out of which such liens were to be paid. As the owner of the equity, he could redeem from the tax sale; and the right of possession, and, we must presume, possession followed his purchase of it. One who enters into possession of lands, under title, and enjoys the profits thereof, is under obligations to discharge the burdens which the law imposes upon the property for the support of government; and that, according to Lacy v. Davis, 4 Mich. 150, whether those burdens already existed as liens when he came into possession, or are thereafter created. . . . As a general rule, the law does not permit one interested in land with others, all deriving their title from a common source, to acquire an absolute title to the land by tax deed, and thus cut off those interested with him. This rule has been applied to tenants in common, mortgagor and mortgagee, so as to prevent the former acquiring tax title to the injury of the latter; and by parity of reasoning, we think, should be extended to the holder of the equity standing in the place of the mortgagor. . . . It would be a fraud on the first mortgagee to permit Lewis, being in possession of the premises as the owner of the equity of the mortgagor—in possession of the premises which are the primary fund to pay the tax liens—through a tax deed made to him while so in possession, to cut off the rights of the first mortgagee. If Lewis purchased the tax certificate for the taxes of 1858 after the foreclosure sale, and it was clearly his intention when he purchased it, and justice required

that it should be kept alive as a lien superior to that of the first mortgage, a court of equity might perhaps so treat it on the foreclosure of the first mortgage; but he ought not to be allowed so to use it as by virtue of the tax laws to extinguish the rights of the mortgagee. If Lewis has no valid title under the deed for the taxes of 1858, it is clear that he has none under the subsequent deeds.

. . .

"DIXON, C. J. . . . A man cannot have a lien upon his own estate, unless, under peculiar circumstances, it is kept alive by a court of equity. The lien of the certificates, and all interest under them, was merged upon the transfer to Lewis, or upon his acquiring the title to the mortgaged premises. The title to the certificates and the lands being united in the same person, the lands were practically redeemed. It terminated the sales, and restored the estate exactly as it was before the sales took place, except that the taxes for which the sales were made were satisfied. As the successor of the mortgagor, the transfer of the certificates to Lewis was in effect the same as if they had been transferred to the mortgagor himself before Lewis purchased. No valid deed could therefore be issued. It was like a redemption by the successor in interest of a judgment debtor, which does not have the effect of transferring to him the rights of the purchaser at the sale." [See also Bennett v. Keehn, 15 N. W. 776, 57 Wis. 582; Busch v. Huston, 75 Ill. 343; and Bassett v. Welch, 22 Wis. 175.]

Under the doctrine of the foregoing cases, it is clear that whatever rights plaintiff had under the deed of trust were not foreclosed by the Jones-Munger sale.

We will next consider whether or not plaintiff's rights, if any, were foreclosed by the Drainage District tax sale.

The evidence discloses that at the time the drainage tax suit was brought and the land sold under the judgment in that suit, the appellant Blanche Harrell had some interest in the deed of trust on the land. Originally she was a joint owner of the deed of trust. At some time she and Lilly endorsed the note and deed of trust to Dr. Fristoe to secure a loan made by Dr. Fristoe to them. The record does not disclose whether the transaction with Dr. Fristoe was before or after the institution of the drainage tax suit, so that the record is not clear as to just what interest she had at the time. However, since she was not made a party to the drainage tax suit, whatever interest she did have at the time was not foreclosed by said suit, for it is a well-established rule of law in this State that the rights of a beneficiary in a mortgage or a *cestui que trust* in a deed of trust are not concluded by such judgment unless they are made parties to the suit. However, the right of such beneficiary is one of redemp-

tion. The rule was first established in Stafford v. Fizer, 82 Mo. 393, and has been approved and followed in many subsequent cases. In Paxton v. Fix et al. (Mo.), 190 S. W. 328, the court says:

"When land is sold under an execution on a judgment for taxes rendered in a suit to which the *cestui que trust* in a deed of trust on the land was not a party, but in which all other persons concerned in the land, including the trustee in the deed of trust, were made defendants, the purchaser at such sale acquires a legal title superior to that of such *cestui que trust,* and the latter is driven to a suit to redeem from such title acquired by the purchaser under the execution." [See also Richards v. Earls, 345 Mo. 260, 133 S. W. (2d) 381; Gitchell v. Kreidler, 84 Mo. 472; Corrigan v. Bell, 73 Mo. 53; and Allen v. McCabe, 93 Mo. 138, 6 S. W. 62.]

Williams, et al. v. Hudson et al., 93 Mo. 524, 6 S. W. 261, was also a case in which the beneficiaries in a mortgage were not made parties to the tax suit. Th court said:

". . . The purchaser at the execution sale and his vendee stand in the position of one having purchased under a foreclosure of a senior mortgage; the junior mortgagee not having been made a party to the suit. The plaintiffs in this case, being the purchasers under the unforeclosed deed of trust, may redeem from the tax sale; but that sale is not void, and will not be set aside, for no offer to redeem is made in this suit."

In Cowell v. Gray, 85 Mo. 169, a suit by a beneficiary who brought the mortgaged property at a foreclosure sale of his deed of trust against the purchaser at a tax sale for possession of the premises, the court said:

"In Stafford v. Fizer, 82 Mo. 393, it was decided that in suits for the enforcement of the State's lien for taxes, in cases where there shall be a deed of trust on record, if the *cestui que trust* is not made a party, his rights are in no wise affected. In such case it is also there held that the lien of the *cestui que trust* being inferior to that of the State he may enforce his equitable right to pay off and redeem the superior lien for taxes and thus assert his title under his trust deed. In the suit at bar there was no equitable right sought to be enforced, but only a legal right to the possession sued for or claimed. Cowell, the plaintiff herein, being the *cestui que trust* in the deed of trust on record, not being made a party defendant, so far as it appears from the record before us, in the collector's suit for taxes, his rights were not affected, and he may yet set up and enforce his equity of redemption, possibly, in another proceeding; but cannot recover in the case at bar on his legal title."

In the suit at bar plaintiff did not seek to enforce her equitable right of redemption by tendering the amount of the taxes and the expenses of the tax sale. Until she does this, we do not believe that she

is entitled to the relief prayed in her petition, namely, that defendants be foreclosed of all interest in the property, that the premises be sold, and that the proceeds of the sale be applied to the payment of her claim. The court, therefore, properly dismissed her suit.

The judgment is affirmed. *Hughes, P. J.,* and *McCullen, J.,* concur.