T. EWING MILLER v. J. B. ZIEGLER, *et al.*

1. TAX-SALE PURCHASE, *Considered as a Redemption.* Where a party accepts a warranty deed to real estate to secure the payment of a debt due to him from the owner of the premises, records the deed, takes possession of the premises and publicly claims to be the owner thereof, any purchase by him of the premises at a tax sale, while in such possession, may be justly considered by all persons interested in the payment of the taxes, other than the owner thereof, as a redemption of the premises from taxes.

2. TAXES— *Payment or Tender, Before Suit.* Before a suit is commenced to set aside a tax-sale certificate, the plaintiff should pay or tender all taxes embraced therein which the public records show are valid, and which he is under obligation to pay.

### *Error from Montgomery District Court.*

ACTION by *Miller* against *Ziegler* and two others, to enjoin the county clerk of Montgomery county from making, and the other defendants from receiving, a tax deed to certain lots in the city of Independence. Trial by the court at the December Term, 1882, when the court made certain findings of fact, and thereon adjudged that—

"Certain tax certificates were legally and properly issued to said Ziegler, and that by virtue thereof he acquired a valid lien upon said lots 8 and 9, block 54, for the amount therein specified; and that upon the purchase thereof by said Mad-

den, he, the said defendant, M. T. Madden, acquired and still holds a valid, subsisting and first lien upon said lots 8 and 9, block 54, in the city of Independence, Montgomery county, Kansas, under and by virtue of said tax certificates and said indorsements thereon, for the full amounts of said certificates and the indorsements thereon, together with the interest thereon and by law allowed; and that under and by virtue of said tax certificates, the said M. T. Madden was, at the commencement of this suit, entitled to a tax deed to said premises. That the defendant, M. T. Madden, have and recover judgment herein against the said plaintiff, T. Ewing Miller, for his costs," etc.

The court further ordered the dissolution of the temporary injunction theretofore granted in the action. *Miller* brings the case here. The opinion states the facts.

*Wm. F. Turner*, and *J. D. McCue*, for plaintiff in error.

*Wm. Dunkin*, for defendant in error Madden.

The opinion of the court was delivered by

HORTON, C. J.: This was an action by the plaintiff against the defendants, to enjoin the county clerk of Montgomery county from making, and the other defendants from receiving, a tax deed to lots 8 and 9, in block 54, in the city of Independence. The facts are as follows: Prior to July 16, 1877, Peter Scott and wife, the owners of said lots 8 and 9, executed a mortgage to William F. Turner, to secure $1,500 and interest, intending to describe therein the said premises. There was however a misdescription in the mortgage. This mortgage was afterward transferred by Turner to Edward Eaton. On the 16th day of July, 1877, Peter Scott and wife executed to J. B. Ziegler a warranty deed of said lots 8 and 9, subject to any valid incumbrance thereon. This deed was given with the understanding that it was for the purpose solely of securing an indebtedness of $325 owing from Scott to Ziegler. By agreement with Scott, Ziegler took possession of the premises, collected the rents, amounting to $70 per month, and applied the same to the payment of his claim. On the 1st of January, 1878, the claim of Ziegler

was wholly paid, but thereafter and until September, 1879, as the agent of Scott, he continued to hold possession of the premises and collect the rents therefrom, which rents, when collected, he paid to Scott.   Ziegler spoke to Scott about paying the taxes on the premises from the rents collected, but the latter directed Ziegler not to pay the taxes, or any part of them.   On the 13th day of September, 1878, Ziegler purchased the premises at a tax sale for the delinquent taxes of 1877, and paid therefor out of his own private funds.   On the 20th of June, 1879, Ziegler sold and transferred his tax certificates to one Herring.   On the 21st day of June, 1879, Herring paid the taxes on the premises for the year 1878, and the amount thereof was indorsed by the treasurer of the county upon the certificates which he held.   On the 21st day of December, 1879, Herring paid the taxes on the premises for the year 1879, and the amount thereof was likewise indorsed on the tax certificates.   On January 1, 1880, Herring sold and transferred the tax certificates to the defendant M. T. Madden.

On the 20th of July, 1877, Edward Eaton commenced an action asking a reformation of the mortgage executed by Scott and wife to Turner, and praying that the mortgage be foreclosed and the premises sold.   To the petition filed in this action, Ziegler answered that he was the owner of the premises, and that the mortgage was not a lien thereon.   On the 29th of March, 1879, judgment was rendered in the action. It was decreed therein that the Turner mortgage was a first lien upon said lots 8 and 9, which were ordered to be sold to satisfy the debt secured thereby.   The interest of Ziegler in the premises was declared subsequent and inferior to that of Eaton.   Under the decree in the foreclosure action, the premises were sold and the plaintiff purchased the same.   The sale was confirmed on the 19th day of September, 1879, and the deed was executed by the sheriff to the plaintiff.   At the commencement of this action, the county clerk was about to issue a tax deed.   The court found in favor of the defendant Madden, and rendered judgment accordingly.

Two principal questions are presented in this case for our consideration. The first is: Was the relation of Ziegler to the premises at the time of the tax sale of September 13, 1878, for the delinquent taxes of 1877, such as to deceive or mislead to their prejudice persons interested in the payment of such taxes? In other words, was Ziegler disqualified by his own conduct from becoming a purchaser of the premises at the tax sale of September 13, 1878?

The second is: Will an injunction lie to restrain the issuance of a tax deed without a prior payment or tender of the taxes which the plaintiff is under obligation to pay?

The deed to Ziegler was dated July 16, 1877. This deed was recorded on July 17, 1877. Ziegler immediately went into possession of the premises, and continued in such possession until after the date of the tax sale, and until September, 1879. Before purchasing the premises at the tax sale, Ziegler insured the property in his own name for a period of one year, and during all the time he was in possession he collected the rents. The latter action was commenced on July 20, 1877, before the taxes of 1877 became due, and in that case Ziegler alleged that he was the owner of the premises. The contrary was never determined until the judgment was rendered in this action in the court below. At the time the taxes of 1877 matured, and at the time of the tax sale of September 13, 1878, Ziegler was not only in possession of the premises, but held the legal title—publicly claiming the absolute ownership thereof. Until the filing of the answer in this action, he had never disclosed the nature of the agreement existing between himself and Scott. Ziegler being the absolute owner upon the county records, and being in possession of the premises, as to Turner, the mortgagee, and as to Eaton, the assignee, and to all other persons excepting Scott, until the contrary was disclosed, his purchase at the tax sale of 1878 was justly regarded as a redemption of the premises. Applying any other construction to the conduct of Ziegler would operate as a fraud. The statute provides that "in cases where lands are mortgaged, if the mortgagor fails or neglects

to pay the taxes, or in case the mortgagor permits any lands so mortgaged to be sold for taxes, the mortgagee may pay the taxes, or redeem the lands so sold for taxes." (Comp. Laws of 1879, ch. 107, § 148.) If Ziegler had not at the time of his purchase at the tax sale of 1878 claimed publicly to be the owner of the premises, Turner, the mortgagee, or Eaton, if he then held the mortgage, might have paid the taxes, and thereby secured a lien on the mortgaged premises for the taxes so paid; but after Ziegler had purchased at the sale, with his claim of ownership, it was unnecessary for anyone to attempt to redeem or to pay any taxes while he was in possession, because they had the right to consider his purchase as a redemption of the taxes.

Further, if Ziegler had disclosed the true state of affairs attending his purchase at the tax sale of September 13, 1878, prior to the sale under the decree of foreclosure, the plaintiff might have obtained, upon the confirmation of such sale, an order for all taxes and penalties against the premises to be discharged out of the proceeds of the sale. (Comp. Laws of 1879, ch. 107, § 56.) Although upon the findings of the court Ziegler was under no obligation, legal or moral, to pay the taxes on the premises, yet his possession of the premises and his claim of ownership thereto were such as to deceive and mislead the mortgagee, Turner, and all other persons unacquainted with the agreement existing between him and Scott. Upon conduct so wrongful, misleading and prejudicial, no tax deed can, if properly resisted, be issued.

As to the second question, we think that an injunction will not lie without a prior payment or tender of the taxes, which the plaintiff knew before the commencement of this action were valid and had been paid after Ziegler went out of possession. The petition recites that the taxes for the year 1879 amounted to §145.55, and that the same were not paid until the 22d day of December, 1879. The sale to the plaintiff was confirmed on the 19th day of September, 1879, and soon thereafter he obtained a deed to the premises. He was then the absolute owner of the premises. The taxes

of 1879 were not due or payable until November 1, 1879. At that time Ziegler was not in possession of the premises, and had no interest therein. He had transferred his tax certificates to Herring on June 20, 1879. The plaintiff ought to have paid these taxes, or tendered them, prior to the commencement of this action. In the cases of *The City of Lawrence v. Killam,* 11 Kas. 299, and *Challiss v. Comm'rs of Atchison Co.,* 15 Kas. 49, it was held "an injunction will not lie to restrain a tax proceeding without a prior payment or tender of all legal taxes." In *Knox v. Dunn,* 22 Kas. 682, it was decided that "without such tender an action to quiet title would not be sustained against the holder of a tax-sale certificate." In *Pritchard v. Madren,* 24 Kas. 486, it was held "no action will be sustained in a court of equity to restrain proceedings to enforce and collect legal and valid taxes, or to set aside a title founded upon such proceedings, without a prior payment or tender of the amount of such taxes." In *Wilder v. Cockshutt,* 25 Kas. 504, it was ruled that "before a land-owner can successfully resort to a court of equity to contest with the holder of a tax certificate, illegal taxes or charges, he must first pay or tender the taxes or charges conceded to be legal." In *Cartwright v. McFadden,* 24 Kas. 662, an exception as to the payment or tender of taxes was made in an action to quiet title as against the holder of a tax deed, where there was a dispute between them as to what amount should be paid. A distinction however was made in that case between an action to set aside a tax-sale certificate and one to nullify a tax deed. Before an action is commenced to set aside a tax-sale certificate, the plaintiff should pay or tender all taxes embraced therein, which the public records show are valid, and which he is under obligation to pay. If a tender is made, it often happens that a party will accept the tender, and thereby litigation is prevented. A court of equity ought not to be called upon to cast off charges or taxes as a cloud upon title or property, until the plaintiff has paid or offered to pay all of them that are valid. "He that seeks equity must do

equity.". The objection which applies to the validity of Ziegler's purchase applies also to all the taxes paid upon the tax certificates prior to the time that Ziegler went out of possession. The transfer of the tax certificate to Herring, and from Herring to Madden, did not attach to it any greater equities than if it had remained in the hands of Ziegler.

Our conclusion therefore is, that the judgment of the court below must be affirmed, because there was no payment or tender of the taxes which the plaintiff knew were valid, and which had been paid after Ziegler went out of possession of the premises and after the plaintiff had obtained his deed thereto. If, however, the plaintiff had paid or tendered to the defendant Madden the taxes of 1879, and all subsequent taxes (if any) paid by him, he would be entitled to the injunction against the issuance of the tax deed.

The judgment of the district court must be affirmed.

All the Justices concurring.