## THE W. B. COLE.

### O'CONNELL v. PATE.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1893.)

### No. 66.

1. MORTGAGE ON VESSEL—RECORD—FAILURE TO INDEX.
   A mortgage recorded under Rev. St. §§ 4192–4194, relating to the record of mortgages on vessels, is constructive notice, although not indexed. The W. B. Cole, 49 Fed. 587, affirmed.

2. SAME—NOTICE TO PURCHASER.
   A purchaser of a vessel is charged with notice of a recorded mortgage thereon, executed by a previous owner while holding the record title, even though the mortgage may not have been recorded before the bill of sale was recorded, by which the previous owner parted with his title.

3. SAME—BONA FIDE PURCHASER.
   Such notice puts the purchaser on inquiry as to whether the vendee of the previous owner and the subsequent vendees acquiring title before the mortgage was recorded did so, either without paying value or without actual notice of the mortgage. If none of such vendees paid value without notice, the purchaser takes subject to the mortgage lien. If any one of such vendees had no notice of the mortgage and paid value, he took title freed from the mortgage.

4. SAME.
   Such vendee could convey a title freed from the mortgage to all the world except to the wrongdoer who, after taking title with notice of the mortgage, fraudulently sold for value to one without notice of the mortgage, and deprived the mortgagee of his lien. Against the wrongdoer, when the title revests in him, the lien of the mortgage is revived.

5. SAME.
   One who purchases the second title of the wrongdoer is put upon inquiry by the record of the mortgage and the recorded fact that his vendor once acquired the title under a bill of sale executed after the mortgage but recorded before it, as to whether his vendor had not actual notice of the mortgage when he first took title and fraudulently parted with it to an innocent purchaser. It follows that the purchaser can take no better title than that held by the wrongdoer, and that the intervention of bona fide purchasers for value without notice in the chain of title between the first title and the second title of the wrongdoer cannot aid or better the title of the wrongdoer's vendee. Severens, District Judge, dissenting.

6. SAME.
   An assignee of a mortgage on a vessel is chargeable with constructive notice of a prior recorded mortgage, notwithstanding that the assigned mortgage was given to secure a negotiable note.

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

In Admiralty. Libel by Leo Baumgartner against the steamer W. B. Cole for supplies. F. J. O'Connell and C. M. Pate intervened as claimants under mortgages held by each, as to which the district court adjudged the lien of Pate's mortgage superior to that of O'Connell, and this decree, on appeal by O'Connell, was affirmed by the circuit court. 49 Fed. 587. O'Connell again appeals. Affirmed.

Statement by TAFT, Circuit Judge:

This case was begun by a libel filed by Leo Baumgartner against the steamer W. B. Cole in admiralty in the district court for the southern district of Ohio. Baumgartner was the owner of a supply claim against the steamer, and libeled her for its satisfaction. The steamer was ordered sold by the decree of the district court, and the fund brought into court for distribution between Baumgartner and other intervening claimants. The question presented in this appeal was one of priority between two mortgage claimants,—Pate, the appellee, and O'Connell, the appellant. The fund remaining in the court after the payment of prior claims was not sufficient to satisfy both mortgages. The facts were as follows: C. M. Pate and P. B. Bradley were, in the year 1889, joint and equal owners of the steamer W. B. Cole, engaged in navigation on the Ohio river. In May of that year, Pate sold his half interest in the boat to John Eshman, Jr., for $1,500, of which $500 was paid in cash, and the remainder in two notes of Eshman for $500 each, secured by a mortgage on the one-half interest in the boat sold. Bradley, the other owner of the boat, witnessed the mortgage, and went with Pate to the office of the collector of the port at Cincinnati, where Pate left the mortgage for record on the day of its execution. The clerk of the collector, who received the mortgage, did not indorse upon it the date of its receipt, and the mortgage was mislaid, and not recorded during the term of the then collector. The succeeding collector found the mortgage some time after September, 1889, but for reasons not appearing in the record, it was not recorded until March 6, 1890. In January, 1890, Pate made inquiry at the office of the collector, and was told that it had not been recorded. The mortgage was not indexed in accordance with the statute before March 30, 1890. Eshman sold his half of the boat to Bradley, and Bradley paid Pate $200 on the $1,000 due under the Eshman mortgage. January 17, 1890, Bradley sold the entire interest in the boat to the Moscow & Cincinnati Towboat Company for $3,000, the sale being evidenced by a bill of sale properly executed and recorded upon the same day. The towboat company, by the bill of sale dated March 7, and recorded March 8, 1890, sold the boat to W. H. Wright for $3,000. At the same time, Wright executed and delivered to Bradley a note for 30 days for $1,300, secured by mortgage on the boat. This mortgage was left for record March 8, 1890, and was duly recorded in the collector's office. On March 28, 1890, Bradley sold and assigned the note and mortgage for value to F. J. O'Connell, the appellant. O'Connell made no inquiry at the collector's office to find out whether there was any prior recorded mortgage upon the boat.

T. N. Ross and Miner & Carroll, for appellant.

Philip Roettinger, for appellee.

Before TAFT, Circuit Judge, and BARR and SEVERENS, District Judges.

TAFT, Circuit Judge, (after stating the facts.) The question whether a mortgage on a ship delivered to the collector of a port to be recorded, as provided by sections 4192-4194, Rev. St. U. S., is constructive notice to subsequent purchasers if, through the negligence of the collector, it is not actually recorded, was much dis-

cussed in the briefs and arguments of counsel. It is by no means free from difficulty, and, as the decree of the court below can be satisfactorily affirmed on another ground, we express no opinion thereon.

The subject-matter of this controversy is the one-half interest in the steamboat W. B. Cole, which Pate held in May, 1889. He held this, as he had a right to do, independent of Bradley, and could mortgage it and grant it without Bradley's consent. We may therefore dismiss the other half of the boat from our consideration, and regard the case as if Pate had owned the entire boat.

Pate sold the boat to Eshman, May 8, 1889. Eshman mortgaged to Pate on the same day. Eshman sold to Bradley some time thereafter. Bradley sold to the Moscow & Cincinnati Towboat Company, January 17, 1890. Pate's mortgage from Eshman was recorded March 6, 1890. The towboat company sold to Wright, March 7, 1890, and the bill of sale was recorded March 8, 1890. Upon the same day, Wright gave his note at 30 days and mortgage to Bradley, and the mortgage was duly recorded. Bradley sold this note and mortgage to O'Connell, March 28, 1890, before the note had fallen due. Bradley had notice of the Pate mortgage when he bought from Eshman. It does not appear that the Moscow & Cincinnati Towboat Company had any notice of that mortgage when they bought from Bradley, and at that time the mortgage was not recorded. It is clear that the Moscow & Cincinnati Towboat Company was a bona fide purchaser of the boat from Bradley, and, as its title was recorded before the Pate mortgage was recorded, it did not take subject to the Pate mortgage. It had neither actual nor constructive notice of the existence of that lien. Whether Wright had notice of the lien or not, he took all the right in the boat which the Moscow & Cincinnati Towboat Company could convey, and therefore he also held his title to the boat free from the Pate mortgage.

When Wright conveyed to Bradley, the title to the boat as a mortgagee revested in him who had been guilty of the original fraud in selling a boat, which he knew to be mortgaged, free from that mortgage. As against him, Pate's equity was revived, and Bradley held the mortgage on the boat subject and junior to the Pate mortgage. Story, Eq. Jur. § 410; Bisp. Eq. par. 265; Perry, Trusts, 222; Daniel, Neg. Inst. (3d Ed.) § 805; Church v. Ruland, 64 Pa. St. 432; Ashton's Appeal, 73 Pa. St. 153; Sawyer v. Wiswell, 9 Allen, 39; Kost v. Bender, 25 Mich. 516; Kennedy v. Daly, 1 Schoales & L. 355, 379.

The question now is whether O'Connell, who purchased from Bradley for value, got any better right than Bradley had in the mortgage which Wright had executed to him. O'Connell had constructive notice of the Pate mortgage, because when O'Connell bought, March 8, 1890, the Pate mortgage had been recorded. It had not been indexed, but it is generally held in all the authorities that the failure to index a mortgage, if the mortgage is recorded, does not destroy the priority acquired under the law by recording the mortgage. The indexing is for the benefit of the subsequent

purchasers, and a failure to properly index is a violation of the duty of the recording officer, owing, not to the person tendering the instrument for record, but to the subsequent purchasers, who are interested in discovering what the instrument contains. Green v. Garrington, 16 Ohio St. 548; Jones, Mortg. § 553.

If O'Connell had constructive notice of the mortgage from Eshman to Pate, he was bound to know that, if Bradley had actual notice of the Pate mortgage when he bought from Eshman, the statute would not protect Bradley from the Pate mortgage. He was further bound to know that if Bradley, with actual notice of the Pate mortgage, had sold the boat to the towboat company free from the mortgage, the subsequent revesting of the title in Bradley would revive the equity which Pate held against Bradley when he first purchased the boat from Eshman, and would give Pate's mortgage priority over Bradley's. It therefore follows that O'Connell's position in receiving a mortgage from Bradley is exactly the same as if neither the towboat company nor Wright had intervened in the chain of title, for he was bound to know that he could get from Bradley nothing more than a title affected by the same equity in favor of the Pate mortgage with which Bradley's original title was affected.

It is said, however, that O'Connell was not charged with constructive notice of the Pate mortgage, because the mortgage was out of the chain of title. The chain of title disclosed by the record showed a conveyance from Pate to Eshman, from Eshman to Bradley, from Bradley to the towboat company, from the towboat company to Wright, and from Wright to Bradley. Eshman was in the chain of title. The mortgage, which was recorded, bore date at the time when Eshman was shown to be the owner of the boat, though recorded at a later date, and after Eshman had parted with his title. The authorities are uniform in holding that a subsequent purchaser is charged with notice of whatever appears in the chain of title. The mortgage of Eshman to Pate was in the chain of title, because it was executed by one who owned the boat, while he owned it. The fact that it was recorded at a time after he had parted with the possession of the boat does not take it out of the chain of title.

In Flynt v. Arnold, 2 Metc. (Mass.) 619, 622, Chief Justice Shaw says, in discussing the effect of the recording acts:

"Suppose, for instance, A. conveys to B., who does not immediately record his deed. A. then conveys to C., who has notice of the prior unregistered deed to B. C.'s deed, though first recorded, will be postponed to the prior deed to B. Then suppose B. puts his deed on record, and afterwards C. conveys to D. If the above views are correct, D. could not hold against B.—not in right of C., because, in consequence of actual knowledge of the prior deed, C. had but a voidable title; and not in his own right, because, before he took his deed, B.'s deed was on record, and was constructive notice to him of the prior conveyance to B. from A., under whom his title is derived."

Again, the learned chief justice said:

"The practical consequences resulting from this view of the registry acts would seem to be these: If a prior conveyance is recorded at any time, however late, before a subsequent conveyance is made by the same grantor to

a second grantee, the registration of the deed is conclusive legal notice to the second grantee of such prior conveyance."

The same doctrine is held in Mahoney v. Middleton, 41 Cal. 41; English v. Waples, 13 Iowa, 57; Van Rensselaer v. Clark, 17 Wend. 25; Van Aken v. Gleason, 34 Mich. 477; Jackson v. Post, 15 Wend. 588; Fallas v. Pierce, 30 Wis. 473.

In the last case Chief Justice Dixon delivered a very interesting opinion, in which he explained the reason for the rule. He says, on page 473:

"Now, the reason why the purchaser from C., in the case first above supposed, who buys after the recording of the prior deed to B. from A., also the grantor of C., is bound to take notice of B.'s deed, or of the fact that the true title is or may be in B., is that such purchaser, in looking upon the statute, sees that B.'s prior and paramount title at common law is not to be divested, or his deed avoided, except upon the happening of three distinct events or contingencies, the absence of either of which will save the title of B., or prove fatal to that claimed by C., or which may be acquired by a purchaser from him. Those events or contingencies are—First, good faith in C., i. e. the purchase by him, without notice of the previous conveyance to B.; second, the payment of a valuable consideration by C.; and third, the first recording of C.'s deed. The purchaser from C., looking upon the record, sees—First, the prior conveyance from A. to B.; and, second, the first recording of C.'s deed. Of these two facts the record informs him, but, of the other two facts requisite under the statute to constitute valid title in C. as against the prior purchaser, B., the record gives him no information. For knowledge of the other two facts, namely, the good faith of C. and valuable consideration paid by him, the purchaser from, or any one claiming title, under, C., as against B. or his grantees, must inquire elsewhere than by the record, and is bound at the peril of his title, or of any right which can be granted by or claimed under C., to ascertain the existence of those facts. * * * The operation of the statute, so far as it goes, in favor of the first purchaser, is not limited, and does not stop or cease with the first, second, or third, or any specified number of first recorded subsequent conveyances to subsequent purchasers, or from one such purchaser to another, and consequently the right of the first purchaser to save himself by the recording of his deed continues, or may continue, after any number of subsequent conveyances have been recorded; for if the facts exist that such subsequent purchasers, one and all, bought, either not in good faith, or not for a valuable consideration, then his prior deed will hold, and the title conveyed by it be preferred."

It is obvious from the foregoing authorities that the proper construction of the recording acts charges every person taking title with all conveyances or mortgages made by any one in the chain of title while he holds title, whether the recording of such conveyances occurs then or not. If, upon the record, a prior conveyance seems to be defeated by a subsequent one through delay in recording, then the person taking title must inquire as to the facts which might defeat the statutory effect of such prior record.

But it is said that because O'Connell, in an examination of the record and an investigation dehors the record, would have discovered the fact that the towboat company had acquired a good title as a bona fide purchaser from Bradley, he cannot be charged with notice as to the condition of the title on the record previous to that conveyance. This view, in our opinion, cannot be sustained. A purchaser is charged with notice of his chain of title, whether the grantees therein are bona fide purchasers or not. Whether such constructive

notice will defeat his title is quite another question. O'Connell could not, by an examination of the record, know that the towboat company was a bona fide purchaser, without knowing that it acquired title from Bradley, and therefore that Bradley was in the chain of title. O'Connell also knew that Bradley was his immediate assignor, and that equities against Bradley, existing when he first acquired the title, would revive against him as a mortgagee. Therefore, he was put upon inquiry in regard to Bradley's bona fides in reference to conveyances and mortgages appearing upon the record, recorded subsequently to Bradley's first title, but executed prior thereto.

In other words, O'Connell's position is not affected by the question whether the towboat company and Wright had an indefeasible title, by the reason of a want on their part of actual or constructive notice, because the revesting of the title in Bradley eliminates their indefeasible title from further consideration, and makes the situation exactly as it was when Bradley first held the title. O'Connell had notice that Bradley had taken the title from Eshman. He knew that he was buying his mortgage from Bradley. He ran the risk, therefore, of Bradley's having actual notice of the Pate mortgage when he acquired title. Bradley, it is admitted, did have actual notice of the Pate mortgage. Therefore, the constructive notice which O'Connell received of the Pate mortgage put him on inquiry as to how Bradley's title was affected by it. As that title was subject to the Pate mortgage, O'Connell can take nothing more.

But it is argued that O'Connell is protected in this case by the negotiable character of the note which he received from Bradley, to which he acquired title before maturity. It is said that, as the mortgage was given to secure the note, it was an incident to the note, and went into the hands of O'Connell as free from original equities as the note. There is no doubt that under the commercial law, as administered in the federal courts, a mortgage given to secure a negotiable instrument passes to a bona fide purchaser as free from original equities as the instrument whose payment it secures. Carpenter v. Longan, 16 Wall. 271.

But how does this principle affect the case at bar? The original equities, which are barred by the transfer of the securing mortgage, are equities of which the assignee has neither actual nor constructive notice. O'Connell had constructive notice from the record of Pate's possible equity against Bradley, and, when he bought from Bradley, he therefore took at his peril. Wright had a good title, and could convey one. When Bradley took title, however, it became tainted, by his previous relation to the title. O'Connell, by reason of the negotiable character of the note, took Bradley's title free from any equitable defense by Wright against the mortgage not disclosed by the record; but whatever infirmity there was in Bradley's title, apparent, or suggested by the record of the collector's office, O'Connell was bound to know at his peril. It seems manifest that the doctrine of negotiability does not do away with the effect of the recording acts. Daniel, Neg. Inst. (2d Ed.) § 834b; Linville v.

Savage, 58 Mo. 248; Logan v. Smith, 62 Mo. 455; Sims v. Hammond, 33 Iowa, 368; English v. Waples, 13 Iowa, 57.

Finally, it is argued that in order to give Wright, the purchaser from the towboat company, the full benefit of the title of the towboat company, it is necessary that he should be able to dispose of that good title to any one, and that as O'Connell held the mortgage, as from Wright, by Bradley's assignment, he took the title which Wright was able to convey. Wright was able to convey a good title to everyone in the world but Bradley. Bisp. Eq. par. 265. As against Bradley, Pate's equities revived. O'Connell could not get any better title to the boat by the mortgage than Bradley had, if he knew that Bradley's title was defective. We have shown that he was charged with notice of a defect in Bradley's title, and notice is equivalent to knowledge.

The decree of the circuit court affirming the decree of the district court holding Pate's mortgage prior in right to that of O'Connell upon the one-half of the boat covered by the Pate mortgage is affirmed, at the costs of the appellant.

SEVERENS, District Judge, (dissenting.) I regret my inability to concur in the proposed disposition of this case. In my opinion, the result is wrong, and the reasoning upon which the result is reached is not founded upon sound principle or warranted by authority.

Upon a careful examination of all the cases cited, the text-books referred to, and the cases cited by them, and some other authorities not referred to, I cannot see that they sustain the positions assumed in regard to this case. In the case of Flynt v. Arnold, quoted from 2 Metc. (Mass.) 619, 622, the illustration entirely fails to support the proposition for which it is cited, if there be inserted in the case there supposed what was the fact here, namely, that C. conveys to D. before B. puts his deed on record. That changes entirely the whole line of consequences. The same observation is true of the discussion in Fallas v. Pierce, 30 Wis. 443. The application of the remarks in that case to the facts in this as ground for the conclusion sought to be deduced ignores the controlling fact that the towboat company, by its purchase, became the absolute owner of the boat, and the lien was lost. Having ascertained this from an inspection of the registry, and on inquiry into the fact of the payment of valuable consideration in good faith by the towboat company, the purchaser could take and stand on that title, and he was not bound to look further, for he would not be affected by the defective status of a prior party, even if he knew of it.

The recording of a conveyance after the grantee has lost all title by reason of the prior record of the deed of a bona fide purchaser is not constructive notice to a subsequent purchaser from that bona fide purchaser of anything except that, whatever his pretensions, they have been cut off. Surely, such subsequent purchaser is not thereby bound to pursue an inquiry which would end in an immaterial discovery.

Then, secondly, assuming that Wright stood in the place of absolute owner of the property, he had the privileges which belong to

that character, one of which was to convey it to anybody in security for his obligation, and thus give his note commercial value. His right to do this was not restricted to the privilege of mortgaging it to such persons as might not be affected with equities with which he had nothing to do, any more than any bona fide holder is prevented from communicating his rights to another, even though the latter may be the only one, or is one of a few, who has or have notice of equities which are obsolete as to the bona fide holder.

Thirdly. But it is said that Bradley, on becoming mortgagee, was charged with an equity in favor of Pate in his (Bradley's) relation to the boat, because Bradley sold the boat to the towboat company without disclosing Pate's lien, and thus cut the latter out. It is held by the majority of the court that it was fraudulent in Bradley not to inform the purchaser of the unrecorded mortgage.

Taking this to be so, for the purpose of the discussion, it raised an equity which was collateral to the title. The lien had become dissociated from the title, and the equity survived only by reason of Bradley's demerit. He was not charged with it simply, or at all, because he had notice of the equity of Pate when he took the mortgage from Wright, or because of anything in the recording laws. It was a general equity attaching to him personally. The lien had been detached, but Bradley had come into such a situation that equity acted upon his conscience. That is the theory of the equitable doctrine of the revival of the trust.

Lastly. The mortgage is a mere incident of the note given by Wright. It is not to be treated as an independent thing. It is urged that O'Connell knew he was buying the mortgage from Bradley. This seems to me to indicate a misapprehension. What he knew was that he was buying the note of which the mortgage was the security, given by Wright to communicate value to the note, and thus enable Wright to get money on his note. It is also said that "the original equities which are barred by the transfer of the securing mortgage in such a case are the equities between the mortgagor and mortgagee," as if equities of that kind were the only equities which are barred. This ignores the relation of the mortgage to the note. It is impossible to hold that the rule above stated is the one (as thus limited) which applies to the transfer of negotiable paper before due. In such case the transfer cuts off all equities of third persons. To illustrate, if Bradley had taken the note as a mere agent or trustee for another, his negotiation of the note to a bona fide holder would give a perfect title to the latter, discharged of such equities as attached to him, and the mortgage would go with it, even though he did not transfer it at all. What Wright did was not merely to promise to pay Bradley the note, but it was also a direct promise to pay it to the indorsee, and the mortgage secured this promise. The indorsee did not take an assignment from Bradley of Wright's promise to pay the note to Bradley. He passed by Bradley, and is independent of his merits. The security passed and inured in the same way.

Says Jones on Chattel Mortgages, (3d Ed. § 503:)

"If the debt be in the form of a negotiable promissory note, the assignee by indorsement takes the mortgage as he takes the note, free from any equities which existed in favor of third persons while it was held by the mortgagee."

And this, in effect, is what was supposed to have been decided in Carpenter v. Longan, 16 Wall. 271. See Kenicott v. Supervisors, Id., at top of page 469; and Sawyer v. Prickett, 19 Wall., near bottom of page 166; Sweet v. Stark, 31 Fed. 858.

If O'Connell were to have foreclosed his mortgage, the purchaser at the sale would acquire the title which Wright had when he gave the mortgage; otherwise, every indorsee of negotiable paper secured by mortgage is at the peril of any intervening equities which may have attached to parties while it was in their hands,—a result utterly destructive of the object of the rule which ties the security to the note, and attributes to the former the color and character of the latter.