### ANDERSON v. MESSENGER.

(Circuit Court of Appeals, Sixth Circuit. December 17, 1907.)

No. 1,679.

1. APPEAL AND ERROR—SECOND APPEAL—FORMER DECISION AS LAW OF THE CASE.

It is the established doctrine of the federal courts that the decision of an appellate court on a question of law becomes the law of the case, and will not be reconsidered on a subsequent appeal or writ of error in the same case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4358–4368.]

2. ESCROWS—DEED—CONDITIONS OF DEPOSIT.

To constitute the holding in escrow of a deed it must have been deposited under an agreement which prevents the grantor from recalling it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Escrows, § 2.

For other definitions, see Words and Phrases, vol. 3, pp. 2464–2467.]

3. TRIAL—TAKING CASE FROM JURY—EFFECT OF REQUESTS BY BOTH PARTIES FOR DIRECTED VERDICT.

In the federal courts the effect of requests by both parties for direction of a verdict at the close of the evidence is the same as a stipulation to try the case to the court without a jury, and the direction of a verdict for one party is equivalent to a general finding of the facts in his favor which must stand, if there was any evidence upon which it can be supported; but if the judgment rendered must necessarily rest upon a fact or facts, the finding of which was not warranted by any evidence in the case, it is erroneous.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 400.

Operation and effect of motions by both plaintiff and defendant for direction of verdict, see note to 77 C. C. A. 8.]

**4. LIFE ESTATES—TAXATION—FORFEITURE OF INTEREST OF LIFE TENANT BY PERMITTING SALE FOR TAXES—OHIO STATUTE.**

Rev. St. Ohio, § 2852, which provides that if any person seised of lands for life shall fail to pay the taxes thereon for such length of time that they are sold for taxes, and shall fail to redeem the same, shall forfeit all of his estate therein to the remainderman, and which as construed by the Supreme Court of the state applies only in case of a valid sale, cannot be effective in any case to vest title in a remainderman, since the tax sale, if valid, cuts off both the life tenant's estate and his own. But such provision, if conceded effectiveness in any case, being a part of the statute relating to general taxation, does not apply to sales made for special assessments for local improvements.

**5. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—VALIDITY OF TAX SALE—ASSESSMENTS FOR LOCAL IMPROVEMENTS.**

The charter of the city of Toledo, Local Laws Ohio 1836-37, p. 32, while authorizing special assessments on property to pay for local improvements, made no provision for a hearing to ascertain the benefits to such property by reason of the improvement, and for that reason a sale of property thereunder for nonpayment of such an assessment was void, as depriving the owner of his property without due process of law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 872.]

**6. SAME—TENURE OF OWNERSHIP—DEPRIVATION WITHOUT DUE PROCESS OF LAW.**

The fourteenth amendment to the Constitution of the United States, requiring due process of law, merely applied to the legislation of the states an elementary principle of the common law which was a part of the fundamental law of the several states, and which the federal courts in administering the law of the states were previously bound to recognize and enforce.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 726, 727.]

**7. ESTOPPEL—PURCHASE OF TAX TITLE BY PERSON UNDER DUTY TO PAY TAXES—EFFECT AS AGAINST GRANTEE.**

A mortgagee assigned his mortgage as collateral security. He subsequently obtained a quitclaim deed to the property from the mortgagor, and while he held the same assessments were levied thereon for local improvements, and the property was sold for their nonpayment. Subsequently, the assignee of the mortgage foreclosed the same, and a contract was entered into between him and the assignor, by which, in consideration of the surrender of other collateral held by him, it was agreed that the assignee should take title to the mortgaged property under the foreclosure decree. Thereafter the assignor acquired the tax title. *Held*, that he could not use such title nor invoke any rights by reason of the tax sale to defeat the title acquired under the foreclosure decree, both because estopped by his contract, and because, being the one on whom the duty rested to pay the taxes, his acquisition of the tax title operated as a redemption as between him and the holder of the mortgage.

**8. EJECTMENT—DEFENSES—ESTOPPEL OF DEFENDANT TO DENY PLAINTIFF'S TITLE.**

The fundamental question in an action of ejectment is the right of possession, and this usually follows the legal title, but the defendant may be under an estoppel which precludes him from denying the plaintiff's title, in which case he cannot set up to defeat plaintiff's right of possession an adverse title which he is estopped from asserting.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Ejectment, § 114.]

In Error to the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

R. P. Cary, C. H. Trimble, and C. A. Thatcher, for plaintiff in error.
H. E. King and C. W. Everett, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, District Judge. This cause came here on a former writ of error, and, upon attentive consideration of the record, we reversed the judgment of the court below. 146 Fed. 929. We did not direct the judgment to be entered in that court, as we might have done, but on account of certain incidental matters about which the record was not clear, and which might properly affect the judgment which ought to be given, notably certain sales and deeds of the land on assessments for local improvements, we thought it expedient to order a new trial; and a mandate issued accordingly. A second trial has been had, this time before the court and a jury, with the result of a verdict for the defendant under the direction of the court and a judgment for that party. This case is again brought here by the plaintiff for review of the proceedings on that trial. The principal facts are fully stated in our former opinion and need not be now repeated at length. With the exception of those which relate to the assessment and sale of the land for a local improvement, the grading of a street in Toledo, and the deeds issued thereon, the facts exhibited by this record are in all essential particulars the same as those disclosed by the record at the former hearing. We have been invited by counsel for defendant to reconsider the question of the construction of Henry Anderson's will. We must decline to do this. The questions there decided are matters adjudged and have become the law of the case. When the former writ of error was disposed of the questions of law in the case were settled, and we have now no authority to redetermine them. This is the established doctrine which governs the federal courts and is quite generally accepted in other courts. This court has recognized and applied the rule in previous cases. Stoll v. Loving, 120 Fed. 805, and cases cited at page 806, 57 C. C. A. 173; Western Union Telegraph Co. v. City of Toledo, 121 Fed. 734, 58 C. C. A. 16. And see, also, Maguire v. Tyler, 17 Wall. 253, 284, 21 L. Ed. 576; Kingsbury v. Buckner, 134 U. S. 650, 670, 10 Sup. Ct. 638, 33 L. Ed. 1047. All the reasons and arguments which might have been urged at the hearing on the former writ of error against any conclusion then made were, by the effect of the decision, overruled. No doubt, if upon a new trial a substantially different state of facts is shown so that another question is presented, the former adjudication does not hold. But that is not the case here, except as above noted. With respect to our decision that the deeds of the executors and trustees of Henry Anderson to Charles Butler were not valid as against the remainderman for the reason among others that they were not delivered during the continuance of the trust with which the executors were charged, a point which is now contested, we add that the conditions on which that decision was based were not altered on the new trial. In the stipulation respecting the facts, it was stated that the deeds were not delivered until about the 1st of May, 1860, at which time the executors were no longer trustees. After the cause had been remanded to the Circuit Court, upon

application of the attorneys for the defendant stating that they were mistaken when they made that stipulation, and that the deeds were delivered at an earlier date, the court relieved the defendant from it. But the fact stated in the stipulation in that regard was clearly shown by the evidence in the case. And upon the new trial the evidence that the fact was as stated was so clear and uncontradicted that a finding to the contrary would have been wholly unauthorized. But as we shall see, the court did not find that the deeds in question were delivered earlier than about May 1, 1860.

It is contended by the defendant that the deeds from the trustees under the will to Butler were held in escrow by the Manhattan Bank to be delivered upon the payment by Butler of his debt. But to constitute an escrow there must be a contract, which prevents the grantor from recalling the deed. James v. Vanderheyden, 1 Paige (N. Y.) 385; Cook v. Brown, 34 N. H. 460; Prutzman v. Baker, 30 Wis. 644, 11 Am. Rep. 592. There is no evidence in this record that anything more was done or intended than to leave the deeds with a depositary conveniently near to Butler, so that when he should pay his debt he could take the deeds. For aught that appears they could have been recalled at any time without the violation of any contract on the part of the trustees. To have prevented them there must have been some binding obligation. The self-serving statement by Butler that they were left at the bank in escrow is not evidence that such was the fact. And in his letter of March 19, 1860, to one of the trustees asking for the delivery of the deed he states that he has been to the bank and seen the deed, and that "the envelope has the indorsement 'the property of Walter Goodman, Peter Anderson, and to be delivered on the order of either of them.'"

At the conclusion of the evidence, both the plaintiff and the defendant requested the court to charge the jury peremptorily, each in his own favor. The court refused the request of the plaintiff and granted that of the defendant. We are required by the opinion of the Supreme Court in Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654, to hold that these mutual requests were the equivalent of a withdrawal of the facts from the jury and a submission of them for a finding by the court. And we must presume that the consequence must be the same as if there had been an original stipulation to try the case without a jury. In that case, where the court makes only a general finding, that finding must stand if there was any evidence on which the court could have properly found the facts necessary to support the judgment. But if, though the finding be general, it must necessarily rest upon a fact or facts, the finding of which was not warranted by any evidence in the case, a judgment based on such general finding would be erroneous. One of such facts in the present case would have been that the deeds were delivered at a time when the trustees were authorized to deliver them. The presiding judge did not file any written opinion, and the bill of exceptions does not state the ground of his action. At the hearing we were supplied by counsel for the plaintiff with a copy of the stenographer's notes of the judge's statement of the ground on which his direction was given to the jury. Counsel for the defendant stated that they had also a copy, and no objection

was made to the correctness of that furnished by counsel for the plaintiff. The opinion of the court below is not required to be made part of the record, and is sent up only to enable the appellate court to understand the grounds of its decision, and, if its authenticity is shown, that is sufficient. In these circumstances we think we may properly refer to it. Having regard to our former decision, it must have been made to appear on the new trial either that the deeds of the trustees were delivered while they held the office of trustees, or that the plaintiff had been cut off by the assessment proceedings and the deeds to Butler founded thereon. It appears from the stenographer's notes that the court put its direction to the jury upon the sole ground that the plaintiff's action was barred by the statute of limitations, in that he had not asserted his right within 10 years after he had become of age. He reached that conclusion upon the following line of reasoning: He conceded the general rule to be that statutes of limitation for actions in ejectment run only from the time when the right of entry accrues, and that in the case of one having an estate in remainder his right of entry accrues on the cessation of the preceding estate. But he referred to a statute of Ohio which he thought operated in the case at bar to extinguish the life estate before its intended limit and to accelerate the commencement of the estate in remainder. That statute was this:

"If any person who shall be seised of lands for life shall neglect to pay the taxes thereon, so long that such lands shall be sold for the payment of the taxes, and shall not, within one year after such sale, redeem the same, according to law, such person shall forfeit to the person or persons next entitled to such lands in remainder or reversion, all the estate which he or she so neglecting as aforesaid, may have in said lands." Rev. St. Ohio, § 2852.

It has the rare quality that it proposes to punish the delinquent taxpayer by forfeiting his estate to another person. The Supreme Court of Ohio holds that this statute is valid (McMillan v. Robbins, 5 Ohio, 28); but that to have effect the sale must be a valid sale, and that a void sale does not work a forfeiture. Estabrook v. Royon, 52 Ohio St. 318, 39 N. E. 808, 32 L. R. A. 805. And this seems a just conclusion if the statute is valid, for it would be an absurdity to punish a man for a neglect to do a thing which he is not legally obliged to do. That which is void is as if it did not exist. But if the sale is a valid sale, the title is thereby forfeited to the purchaser. Or, to speak more precisely, such a sale cuts up by the root all previous titles, and inaugurates a new and absolute title in the purchaser. As the preceding estate as well as the estate in remainder are cut off by the neglect to pay the taxes and the sale and deed therefor, there is nothing to forfeit, and the entire scheme is fruitless. But this discussion assumes that the statute in question, which is a part of legislation relating to the collection of general taxes, applies to assessments for local improvements. We think, however, it would be erroneous to admit this. And we shall premise what we have to say upon this subject by suggesting that the question is involved in the entire proceeding taken by the common council of the city for the assessment of the land in controversy for the projected street improvement; and, further, that if this particular provision of the statute is to be given any effect, it is for the forfeiture of the life

estate and is penal, and should therefore be given a strict construction. There is a well-known and well-established distinction between general taxes and assessments for local improvements. The former are for the promotion of the general order and the welfare of the public organization. They are levied and collected under general laws which regulate the steps to be taken in detail, and, with respect to the more important, fix a definite time and place when and where they must be taken. Every citizen is required to take notice of such laws; and he is thereby provided with the means of knowing what is necessary for the protection of his property, and the time, place, and manner of securing it. An assessment for a local improvement is a levy made upon the citizen or his property for the purpose of paying for an improvement in his neighborhood which enhances the value of his own property. It would be beyond the power of the government to compel any such tribute of one person for the single purpose of benefiting his own land; but when a number of owners composing a district of the public or owning land in the district which is benefited by the improvement, the power to specialize the district for such a purpose is recognized as falling within the analogy of the power to levy general taxes. It is a quasi public purpose. And the legislation is special. Under the general grant to municipalities of the power to tax, no authority to levy special taxes for particular improvements is included. There must be special authority, and provision must be made for safeguarding the rights of those affected by its exercise; and, further, the exercise must be pursued in all essential particulars in accordance with the lines prescribed. The citizen is not now under the obligation of the general law nor directed by it how and when he is to protect himself against the invasion of his private rights. As the power to levy tribute for such improvements is not conferred by a general grant but only by special grant, its exercise must conform therewith, and it is a reasonable rule, the proceeding being in invitum, that not only must the power conferred provide for the protection of individual rights, but that the provisions shall be strictly complied with. The grant may refer to and adopt provisions of the general law, and in such case the latter, so far as they extend, are to be read as part of the grant, but not otherwise or further. These propositions are believed to be well established; and the consequence is that if the special law fails to make the necessary provisions, or if provided, they are not followed, any proceedings thereunder are void. This distinction between general taxes and special assessments is universally recognized.

Cooley in his work on Taxation, p. 636 (2d Ed.), says, "Though assessments are laid under the taxing law, and are in a certain sense taxes, yet they are a peculiar class of taxes, and not within the meaning of that term as it is usually employed in our Constitutions and statutes;" citing many cases, among which are Maloy v. Marietta, 11 Ohio St. 636; Lima v. Cemetery Association, 42 Ohio St. 128, 51 Am. Rep. 809; Raymond v. Cleveland, 42 Ohio St. 522. To which may be added Reeves v. Wood County, 8 Ohio St. 333; Chicago, etc., R. Co. v. Keith, 67 Ohio St. 279, 65 N. E. 1020, 60 L. R. A. 525. And in the last case here cited it was held that a statute which

did not provide for a notice of hearing in a proceeding for levying a particular assessment was void. Judge Jackson, while Circuit Judge, so held in Scott v. Toledo (C. C.) 36 Fed. 385, 1 L. R. A. 688, and again in Murdock v. Cincinnati (C. C.) 39 Fed. 891. The extent to which the land is benefited and therefore of the assessment to be levied upon the owner is of prime importance to him. An opportunity must therefore be provided for him to be heard before some tribunal having authority to determine it, upon the question of the extent of the benefit. The provisions of section 28 of the charter of the city of Toledo, Local Laws of 1836–37, p. 40, do not provide for any such hearing. The only notice or hearing provided for by any part of the charter relating to this subject is one contained in section 28, which is this:

"The city council shall give notice in one of the newspapers published in said city or vicinity for six consecutive weeks of the improvement to be made, in order that any one damaged by reason of such improvement may file his claim in writing in the office of the city clerk within ten days after the expiration of said six weeks' notice, and the said committee shall assess the damages, if any, of such claims and shall add the same to the cost of the improvement as a part of the expense so to be assessed as aforesaid, and said committee within twenty days after the time shall have expired for filing claims for damages, shall return to the office of the treasurer a report setting forth the estimated cost of such projected improvement including the damages awarded by them, etc."

The damages here spoken of are such as the several parcels sustain by reason of the construction of the work. They are made part of the general cost and expenses of the proceedings. They have no relation to the value of the benefits for which the several parcels are assessed.

The charter was amended by an act passed in 1846, Local Acts, p. 208, and by section 36 it was enacted that:

"The tenth, twenty-sixth, twenty-seventh, twenty-eighth and twenty-ninth sections of the act of 1837 are repealed, provided 'that all rights, titles, liabilities and remedies acquired or incurred or subsisting under and by the first mentioned act and the ordinances, resolutions and bylaws made in pursuance of the authority thereof, shall remain unaffected by the passage of this act and the repeal of said act of incorporation, and the ordinances, bylaws and resolutions aforesaid shall remain in force until the same are repealed by the council and the present officers of said city shall hold their respective offices until their successors are elected and qualified.' Passed Feb. 27, 1846."

But the proceedings relative to the assessment had taken place as early as 1843, and it was put upon the roll of that year. For some reason the taxes and assessments on that roll were not collected. The assessments in question were put upon the roll of the year 1847, and, being unpaid, the lands were sold, and certificates thereof given. It appears that the proceedings for the assessment were taken in 1843 and therefore controlled by the act of 1837, and that the proceedings for the collection in pursuance of which the sale was made, and the sale itself, took place in 1847. The deeds thereon were made in 1860. It is contended that the deeds were void, because the proceedings on which they rest in failing to afford an opportunity for a hearing, disregarded a fundamental right, and we are of opinion that for the reasons we have given it must be so held. Cooley

on Taxation (2d Ed.) 655; Whiteford v. Probate Judge, 53 Mich. 130, 18 N. W. 593; Chicago, etc., R. Co. v. Keith, 67 Ohio St. 279, 65 N. E. 1020, 60 L. R. A. 525; 25 Am. & Eng. Encl. of Law (2d Ed.) 1215. The fourteenth amendment to the Constitution in requiring due process of law formulated a principle of justice which had long been recognized. It applied to the legislation of the states an elementary principle which had been imbedded in the institutions of government from the time of Magna Charta that a man may not be disturbed in his rights of person or property unless by due process of law, which always includes notice and an opportunity to be heard. And it made complaints of the violation of this enactment justiciable by the courts of the United States. But before that time it was a principle in the fundamental law of the several states; and the federal courts in administering the law of the states were bound to recognize and enforce it.

Other reasons consisting in irregularities in the proceedings are urged by counsel for the conclusion that the deeds were void, but we will not prolong this discussion by considering them. We think that the court below was mistaken in supposing that under the law of Ohio the failure to pay these taxes resulted in a forfeiture of the life estate, and that the plaintiff's right to the possession accrued at a time prior to the death of James Anderson. All this is said however upon the assumption that section 2852 has application to an assessment for local improvements. But it is as we have said a provision found in the statutes for general taxation, and the neglect to pay taxes which this section speaks of is the neglect to pay the taxes which the statute is there dealing with. Besides, it seems clear that the person whose estate is to be forfeited must have been under an obligation to pay the taxes. But at the time when these assessments were made the life tenants under the will of Henry Anderson were not the owners, and owed no duty to pay these assessments.

But there is another reason springing from other facts which we think must lead to the same result. In 1843, when this assessment, if valid, should have been paid, Charles Butler was the owner of this land by virtue of the deed to him from Bissell in February of that year. He continued to be the owner until the date of the master's deed to Henry Anderson on November 18, 1844, and should have attended to the payment of the taxes and assessments levied upon the land in those years. The lands were bid off by Charles M. Dorr at the sale on December 27, 1847. On February 18, 1860, Butler sold these lands by contract to Bronson. March 26, 1860, Butler obtained from the city clerk deeds which recite that they were issued to Butler as assignee of the certificates of sale. He thus became the owner of a title which had its origin in his own default. By his contract with Henry Anderson of October 4, 1844, the latter was to take title to this land upon the sale which had been made to him by the master in the earlier part of that year. For several years previously the mortgage had been pledged by Butler to Anderson as security for his debt, and the question arises whether, in view of these facts, Butler could acquire and stand upon, as against Henry Anderson or those holding in his right,

a title to this land based on his neglect to pay a lawful assessment upon it (for we are now assuming it was lawful) while he was the owner, and which he was bound to pay or cause to be paid. We think the obligation of good faith would prevent him from doing this. It is true he did not warrant the title. But it was not necessary that he should have done so, if, by his relation to the property and to other parties having an interest in it, he was precluded from building up a hostile title to it in derogation of his contract. Dorr did not obtain the deeds upon his certificates of purchase. But he had the right to have them. The title, assuming the proceeding to have been legally sufficient to found one, never came to him. But this circumstance is not very material. When Butler purchased the certificates and later obtained the deeds, they came into the hands of one who, as against the title derived from Henry Anderson, had been originally charged with the obligation to pay the taxes, and although that obligation did not rest upon Dorr, it revived and attached to Butler, and effectually precluded him from setting them up as muniments of title in himself as against the title which he had for his own purposes created in another. This doctrine is now well settled. Bispham's Equity, § 265; Kennedy v. Daly, 1 Sch. & Lef. 355, 359; Church v. Ruland, 64 Pa. 432; Ashton's Appeal, 73 Pa. 153; Sawyer v. Wiswell, 9 Allen (Mass.) 39; Kost v. Bender, 25 Mich. 516; Dubois v. Campau, 24 Mich. 360; O'Connell v. Pate, 59 Fed. 182, 184, 8 C. C. A. 78.

In Kost v. Bender, the action was by the indorsee of a promissory note against the maker. The plaintiff had been the original payee of the note, and had indorsed it for value to a bona fide holder who sold it to the payee; and the question was whether the plaintiff did not by reacquiring the note expose himself to the defenses which existed while he was the first holder. Judge Cooley, in delivering the opinion of the court, said:

"If the defendant had a legal and just defense to the note, either in whole or in part, arising from the conduct of the plaintiff, it was the duty of the latter to recognize and allow it, and he had no moral right to cut it off, or to attempt to do so by any transfer. But having done so, and afterwards acquired the note a second time, the law, we think, will not permit him to take advantage of this wrong, but will remit the defendant to his original rights."

And he refers to the former case of Dubois v. Campau, 24 Mich. 360, as an illustration of the principle, in which the action was ejectment, where the party whose duty it was to pay certain taxes sought afterwards to claim the benefit of a tax title which was based upon his default to pay them, and which a third party had bought in and then sold to him. It was held in that case that he had no more right to claim the benefit of the title he had thus bought in than he would have had if he was the original purchaser at the tax sale. In the case referred to, the defense was made under a tax deed and possession thereunder, for a period long enough to establish a title under the statute of limitations. In the opinion of the court it was said at page 370:

"But in a case where a party whose duty it is to pay all the taxes on the land allows it to be sold for such taxes to a stranger who might hold the whole against all parties, though this might terminate the tenancy while such tax title is held by another, yet it has been terminated by the wrong of the party in default; and when he purchases in the title, he and the former own-

ers are remitted to their original position and rights as they stood before the sale, and as they would have stood had the taxes been paid when due, or had the sale for the taxes been made directly to such party in default. Such we think must be the result upon principle."

And, further, the court said:

"We think, therefore, the purchase of the tax title * * * operates merely as a payment, and gave him, the purchaser of the tax title, no additional rights to the land, as against the plaintiff at least."

And the judgment was reversed because effect had not been given to this principle. And we note in this connection that these cases were actions at law, the latter being ejectment. The rule in Michigan in regard to the nature of the action and the circumstances in which it may be maintained is the same as in the federal courts. It matters little whether the doctrine in such cases rests upon an estoppel, or upon the theory that the title never vested in the party, but was extinguished by operation of law, which we think the correct view. It was so held in Douglas v. Dangerfield, 10 Ohio, 152, 158, where Hitchcock, C. J., said:

"If by this proceeding he could be considered as having procured a strictly legal title, the circumstances are such as might induce a court of equity to interpose and divest him of that title at the suit of the former owner of the land. But in our view, the complainant acquired no additional rights by the purchase, and must be held to be in the same situation that he would have been had he paid the taxes before the sale."

And, indeed, the doctrine has frequently been recognized as having a peculiar adaptation to the case of one who has acquired a deed for land for taxes which he ought to have paid, especially where, as between himself and another person, he ought to have paid the taxes. A mortgagor cannot set up against his mortgagee a title founded on his default in paying the taxes. And in Smith v. Lewis, 20 Wis. 350, it was held to apply to a mortgagee as against the assignee of a mortgage. And if, in this case, Bissell, the mortgagor, had continued to be the owner, he would in like manner have been precluded from setting up a hostile tax title founded on his own default. Upon an abundant citation of authorities Judge Cooley sums up the doctrine thus:

"There is a general principle applicable to such cases which may be stated thus: that a purchase made by one whose duty it was to pay the taxes shall operate as payment only; he shall acquire no rights as against a third party by the neglect of a duty which he owed to such party. This principle is universal and is so entirely reasonable and just as scarcely to need the support of authority. Show the existence of the duty, and the disqualification is made out in every instance"—

and then, after giving numerous illustrations, he says further:

"In all such cases, and all to which the like reasons apply, the purchase as between the parties, is in law a payment only; or if made at secondhand from another who was purchaser at the public sale, it is allowed to operate, for the purposes of justice only, as a redemption."

Cooley on Taxation (2d Ed.) 501–3; Id. (3d Ed.) vol. 2, 964 et seq. But counsel answers this by saying that this could not affect the legal title; that it might raise an equity; but this could not be regarded in

an action of ejectment where only the legal title is in issue. It is undoubtedly the rule that the plaintiff must have the right of possession, and this usually follows the legal title. But if the defendant is under an estoppel which precludes him from the right to deny the title of the plaintiff, he cannot maintain the right to possession under a hostile title which he is estopped from asserting. The fundamental question in an action of ejectment is to whom does the right of possession belong. Cincinnati v. White's Lessee, 6 Pet. 431, 8 L. Ed. 452; Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618. The question of the legal title is generally the leading factor in determining that right, but it is not in all circumstances the ultimate test. But if the acquisition of the tax title by Butler operated only as a redemption, there is no occasion for invoking the doctrine of estoppel.

The judgment must be reversed; and as there was a trial by jury, we think the proper course will be to order a new trial, notwithstanding the fact that both parties requested positive instructions, and the court took the facts from the jury.